MARK WINDSOR (SBN 190589)
Law Office of Mark Windsor
65 N. Raymond Ave., Ste. 320
Pasadena, California 91103
Telephone: (626) 792-6700
Email: mark@windsorlaw.us

Attorney for Defendant
MARK HANDEL

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK HANDEL,<br><br>Defendant. | Case No.: 20-CR-612-ODW-1<br><br>**ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM; EXHIBITS**<br><br>Hearing Date: November 6, 2023<br>Time: 11:00 a.m.<br>Department: 5D |

Mark Handel, by and through counsel, files this supplement to his Sentencing Memorandum [Doc. 121] to correct the record regarding both his filing and documents filed by the government, and to support the Guidelines calculations of the defense.

## I.   CORRECTION TO DEFENDANT'S MEMORANDUM

First, in Defendant's Sentencing Memorandum (p. 6, lns 10-12), the undersigned stated that in 2016 Mr. Handel settled with the Sabah brothers and Sunnyside Development for $300,000.00. That is incorrect. According to the bankruptcy documents (Case No. 15-bk-11292-MT, Dkts. 134 and 144) Mr. Handel and Sunnyside agreed to a total amount of 185,000.00 to be paid in installments. By December 15, 2019, Sunnyside

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

had been paid in full. (Case No. 15-bk-11292-MT, Dkt. 222.) The Sunnyside claim arose out of a judgment stemming from a settlement agreement where defendants specifically admitted to no wrongdoing. (Exhibit G, "Settlement Agreement and Mutual Release," at p. 1, ¶ B). Under this settlement agreement, Mr. Handel would have paid a total of $80,000.00 to terminate the case. *Id.* at p. 3, ¶¶ 2(a), 2(c). Because Mr. Handel was unable to make these timely payments, a stipulated judgement was entered against him in state court for $149,000.00 in 2009. (Cite?).

## II.   GUIDELINES ISSUES

### A.   Sophisticated Means Enhancement

Both Probation and Government Counsel are correct that both caselaw and the application note to the Sophisticated Means enhancement provide justification for applying a two-level increase in offense level here and likely most other bankruptcy fraud or tax evasion cases. These cases typically involve defendants, such as most real estate developers, who routinely create LLCs as part of their business practices. The government's exhibits, for instance, contain several examples of a real estate professional and others familiar with the industry discussing the  practice of forming companies for various projects to address the need to manage investor funds, loans, expenses, etc. for each development project.[1] Nevertheless, herein lies one of the central problems with enhancing the guidelines level for defendants like Mr. Handel.

Frank O. Bowman III, law professor emeritus at Columbia University and the University of Missouri School of Law, and former Special Counsel to the Sentencing Commission while he was still with the Department of Justice, commented extensively on the Sophisticated Means enhancement in 2015 in his *Comment on Proposed Amendments to Economic Crime Guideline, §2B1.1* (written testimony for the Sentencing Commission hearing, March 12, 2015). Professor Bowman observed:

---

[1] See, ie., Gov Ex 5 at USAO_0028475; Gov Ex 6 at USAO_0106813-0106818;

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

> If loss is moderately large, courts virtually always find sophisticated means in any but the very simplest schemes, and often even in those. Even when the loss is smaller, judgments about what criminal methods are relatively more sophisticated than the norm are so subjective as to be essentially arbitrary.

> Although I advocated the creation of a sophisticated means enhancement back in 1998, I no longer think it serves any useful purpose. It is particularly useless in high-loss cases because stealing really big sums inevitably involves methods the courts characterize as sophisticated means. In such cases it serves only as a nearly inevitable 25% boost to already high guideline ranges. **The enhancement should be eliminated**.

*Id*. at p. 18 (emphasis added).

Furthermore, neither the application notes nor caselaw *requires* application of this enhancement under the circumstances of this case – where Mr. Handel used exactly one account labeled DTMM to funnel his income. Mr. Handel's creditors were made fully aware of DTMM and its purpose at the 341(a) Meeting of Creditors on his bankruptcy petition on May 21, 2015. His creditors were further provided with statements of all funds going through this account from May 2015 onward. This information was therefore well known to his holdout creditors well before the debts were settled during the bankruptcy proceedings.

In CBT's Complaint for Objection to Discharge – essentially its filed objection to Mr. Handel's proposed plan of reorganization – CBT points out that Mr. Handel testified at the above meeting that all of his family's household obligations were paid through DTMM, that the account was funded by his brother and his accountant, that he put the account in his wife's name as separate property, and that Mr. Handel testified "[t]o be candid, [that] DTMM was, was created in [my wife's] name specifically so that we could be immune from someone attempting to sweep accounts." (Case No. 15-bk-11292-MT, Dkt. 40 at p. 9-10, ¶¶ 46–53; see also transcript of the 341(a) hearing, Case No. 15-bk-11292-MT, Dkt. 44-1 at pp. 13-18). At least with regard to the bankruptcy count, Mr. Handel revealed the activity underlying the offense to his creditors on the record and well in advance of their settlement with Mr. Handel. Furthermore, from May 2015 onward,

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

Mr. Handel provided detailed accounting of DTMM. In the context of fraud committed by a real estate developer, this conduct does not contain the elements of sophistication that this enhancement typically entails. As such, the enhancement should not apply to either count.

### B.   Multiple Count Adjustment

This issue hinges on an interpretation of USSG § 3D1.2(d), which states that all counts involving substantially the same harm shall be grouped together (and no multiple count adjustment shall apply). The crux of the arguments of both Probation and government counsel is that the counts don't group because there are different victims. The plain language of both the Guidelines section and the relevant application note make clear that this argument is unavailing.

3D1.2 states, "Counts involve substantially the same harm within the meaning of this rule: (d) When the offense level is determined largely on the basis of the total amount of harm or loss…." *Id*. Application note 6 of this section applies specifically to subsection (d) and states "Subsection (d) likely will be used with the greatest frequency. It provides that most property crimes… are to be grouped together…. Counts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type…. The 'same general type' of offense is to be construed broadly." Of particular relevance here, application note 6 provides a non-exhaustive list of examples where counts are grouped. Among these examples are the following:

> (2) The defendant is convicted of two counts of theft of social security checks and three counts of theft from the mail, each from a different victim. All five counts are to be grouped together. (3) The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together.

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

The counts of conviction here are both centered on Mr. Handel's concealment of his income that resulted in property crimes where the offense level is calculated based on aggregate loss. They are clearly offenses of the same general type under the Guidelines. That the counts of conviction involved different victims is not relevant to the analysis here. The counts should be grouped and no multi-count adjustment should be applied.

### C.   Loss Amount for Count 2 (Tax)

The parties have agreed to a tax loss amount equivalent to the tax loss for 2015, which equates to a level 18. The defense agrees with the support articulated by the government in its position for reaching this correct offense level. Additionally, probation has calculated the loss based on all years where Mr. Handel inaccurately reported his income, based on the fact that Mr. Handel admitted in the plea agreement that he "received unreported income in the following amounts for the following … years…," including 2010-2017. The Probation Officer justifies this calculation based upon USSG §1B1.2(c), which states: "A plea agreement… containing a stipulation that *specifically establishes* the commission of additional offenses shall be treated as if the defendant had been convicted of additional counts charging those offenses." (emphasis added). Subscribing to a False Tax Return requires, as elements of the offense, that Mr. Handel knew the filing was false at the time, and that he acted willfully. These two elements are only admitted to in the plea agreement as to the 2015 tax return, and therefore the admissions as to the other tax years, made in agreement that he should pay penalties and interest as well as back taxes for those years, do not trigger an enhancement of the loss amount under 1B1.2(c).

*Braxton v. United States*, 500 U.S. 344 (1991) squarely addresses the issue of what is required to find that a plea agreement 1) contains a stipulation, that 2) specifically establishes a crime under this Guideline section. The case involved a plea to assault and firearms counts but not to a more serious charge of attempted murder of a U.S. Marshal. With regard to the "specifically establishes" clause, the Supreme Court found that the recitation of facts during the defendant's plea only established that the defendant shot a

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

firearm, and that bullets from the firearm lodged in the front door of the dwelling. Because these facts did not include an admission to an essential element of the attempted murder charge – the specific intent to shoot at a marshal, the facts admitted (whether or not a stipulation) were insufficient to trigger a higher guideline level. *Id*., at 349. The appropriate offense level for Count 2 is 18.

### III. MR. HANDEL'S COMPLIANCE WITH PROBATION REQUESTS

Government counsel attempts to use Mr. Handel's advice of counsel not to provide information regarding businesses in his name to argue that the "government still has concerns about what defendant is hiding." (Dkt. 119 at 20.) This is disingenuous, especially considering the government's acknowledgment that it is "unaware of additional assets that [Handel] has concealed." (Dkt. 119 at 20.) The USPO specifically noted in her recommendation letter regarding Handel's "respect for the law[,]" that "in mitigation[,]" Handel "provided ***substantial*** financial documentation during the presentence investigation process, except for the documents that he declined to provide on the advice of counsel." (Dkt. 117 at 5 (emphasis added).) Advice from Handel's attorneys shouldn't be used against him and, without waiving privilege, counsel asserts that Mr. Handel was ready and willing to answer the question. It was counsel who advised Mr. Handel that, given the unknown active status of various LLCs and given the proximity to the offense conduct, it was better not to answer this question. In any event, Mr. Handel asserts that the public records information regarding the listed LLCs appears to accurately reflect the businesses. (PSR 110(g)-(k)).

Furthermore, Government counsel's suggestion that Mr. Handel prompted a change in ownership of the Livermore project as some sort of harried, brazen, or nefarious response after he found out the FBI was investigating him for bankruptcy fraud, is confusing at best. There were two transfers of ownership of the Livermore project, one in late 2017 and the other in early 2019. In 2017, Jack Benadon was retiring and wanted to step away from the project. (See, ie, Gov Ex 6 at USAO_0106897). Later, in April of

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

2019, there was another transfer because Kenneth Marker and other interest holders wanted to be off the project. According to Mr. Marker, "We wanted to be bought out and so did Richard Grant because we didn't want to be involved anymore." Gov Ex 6 at USAO_0106884, lns 12-14.

To put these transfers in context of Mr. Handel's discovery that he was the target of an FBI investigation, the FBI approached Mr. Handel on July 23, 2018. He had previously been approached twice in 2015.[2]  In 2018, the FBI confronted him with their criminal investigation into his bankruptcy activities. They informed him that they had been surveilling him since 2015. At this 2018 interview, the FBI informed him that he would be charged criminally, and he should help himself by helping them with their investigation. That was the last time Mr. Handel spoke with the FBI.

There appears to be absolutely no connection between Mr. Handel's 2018 awareness of the FBI investigation into his activities and the two changes in ownership of Livermore, first in 2017 due to Benadon's retirement and secondly in 2019 due to decisions made by investors.

DATED: November 3, 2023                          Respectfully submitted,

                                                        /s/
                                                 _____
                                                 MARK WINDSOR
                                                 Attorney for Defendant Handel

---

[2] In 2015, Mr. Handel was twice interviewed by the FBI about his dealings with local politicians who were being investigated for corruption. At that time, Mr. Handel provided a detailed explanation of why he believed both he and these politicians were scrupulously following the law.

ADDENDUM TO DEFENDANT'S SENTENCING MEMORANDUM

**EXHIBIT E**

1  DAVID L. NEALE (SBN 141225)
   JOHN-PATRICK M. FRITZ (SBN 245240)
2  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
3  Los Angeles, California 90067
   Telephone: (310) 229-1234; Facsimile: (310) 229-1244
4  Email: DLN@LNBYB.COM; JPF@LNBYB.COM

5  Attorneys for Reorganized Debtor

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11 In re:                        ) Case No.: 1:15-bk-11292-MT
                                 )
12    MARK HANDEL,               )
                                 ) Chapter 11 Case
13                               )
      Reorganized Debtor         ) POST-CONFIRMATION
14                               ) STATUS REPORT
                                 )
15                               ) Hearing:
                                 ) Date:  April 8, 2020
16                               ) Time:  10:00 a.m.
                                 ) Place:  Courtroom 302
17                               )          21041 Burbank Blvd.
                                 )          Woodland Hills, CA 91367
18                               )
                                 )
19                               )
                                 )
20                               )
                                 )
21 _____)

22

23

24

25

26

27

28

TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE:

Mark Handel (the "Reorganized Debtor"), the reorganized debtor in the above-referenced chapter 11 case, hereby respectfully submits his Post-Confirmation Status Report pursuant to Rule 3020-1(b) of the Local Bankruptcy Rules for the Bankruptcy Court of the Central District of California.

On November 8, 2016, the Court entered an order (the "Confirmation Order") [docket entry no. 166] confirming the Reorganized Debtor's chapter 11 plan of reorganization (the "Plan") [docket entry no. 146].

The Plan is a reorganization plan. During the bankruptcy case, the Reorganized Debtor reached negotiated settlements with two active creditors, California Bank & Trust ("CBT") and Sunnyside Development Partners, LLC and its principals (collectively, "Sunnyside"). Those settlements (each a "Settlement" and collectively, the "Settlements") were incorporated into the terms of the Plan and facilitated a consensual Plan proposal and solicitation process.

**Listing of Claims and Payments Under the Plan**

The Plan contains 9 classes of creditors and no classes of equity holders (because the Reorganized Debtor is an individual), as shown below with the class, identity of claim holders in the class, claim amount, and payments made under the Plan so far:

| Class | Creditor(s) | Claim | Plan Payment to Date |
|-------|-------------|-------|----------------------|
| Class 1 | CBT | $2,850,000.00 | $2,850,000.00 |
| Class 2 | Sunnyside | $140,000 | $140,000.00 |
| Class 3 | Benadon (4 Claims) | $29,121,635.49 | $0.00 |
| Class 4 | JP Morgan Chase Bank | $1,527,835 | $11,601.25 (per month) |
| Class 5 | Bruce Tolchin | $393,267.13 | $3,451.20 (per month) |
| Class 6 | Nationstar Mortgage | $341,992.10 | $2,540.67 (per month) |
| Class 7 | De Lage Landen Financial | $0.00 | $0.00 |
| Class 8 | Phoenix Pavement Co. | $0.00 | $0.00 |
| Class 9 | General Unsecured Creditors | $64,027,463.72 | $9,970.00 |

As to Class 1, the Plan required payment of $2,000,000 to CBT on or before December 31, 2016. CBT received its payment. Pursuant to the Plan, three additional separate payments,

each in the amount of $283,333.33, is due on or before December 31 of 2017, 2018, and 2019.
CBT received its payment due on or before December 31, 2017.  CBT also received its payment
due for December 31, 2018, and on or before December 31, 2019.  Payments to CBT under the
Plan are complete.

As to Class 2, the Plan required payment of $20,000 to Sunnyside on or before January
15, 2017.  Sunnyside received its payment.  Pursuant to the Plan, six additional separate
payments, each in the amount of $20,000 is due on July 15, 2017, January 15, 2018, July 15,
2018, January 15, 2019, July 15, 2019, and December 15, 2019.  Sunnyside received its
payments due for the payments for July 15, 2017, January 15, 2018, July 15, 2018, January 15,
2019, July 15, 2019, and December 15, 2019.  Payments to Sunnyside under the Plan are
complete.

Classes 4 and 6 are receiving regular monthly mortgage payments in the amount of
approximately $11,601.25 and $2,540.67 (adjusted slightly for variable interest rates at times),
respectively.

Classes 7 and 8 are not entitled to any payments under the Plan.

No payments have been made to creditors in Classes 3 as of the filing of this report.
Class 3 requires only annual interest-only payments on a 30-year note.

Class 5 requires monthly principal and interest payments of $3,451.20.  The Reorganized
Debtor is current on payment to Class 5.

Class 9, consisting of general unsecured claims, requires one single payment to each of
the creditors in Class 9 for each creditor's prorated share of its claim based on the total available
initial funds used to fund the Plan.  A list of the Class 9 creditors and their claims is attached as
Exhibit "3" hereto (Exhibits "1" and "2" are intentionally omitted).  Payments to Class 9 were
made on or about April 13, 2017, with each Class 9 claim holder taking its prorated share of
$9,970.

There are no unclassified priority tax claims under the Plan.

The Reorganized Debtor believes that he is current on his payments to the United States

3

1  Trustee for quarterly fees.  Most recently, the Debtor caused a check in the amount of $4,875 for

2  the fourth quarter of 2019 to be sent to the U.S. Trustee on or about March 19, 2020.

3       On December 7, 2016, the Court entered an order allowing the fees and costs of the

4  Reorganized Debtor's general bankruptcy counsel, Levene, Neale, Bender, Yoo & Brill L.L.P.

5  ("LNBYB") in the total amount of $356,214.91.  Pursuant to the Court's order, LNBYB applied

6  its retainer of $52,069 and received payment in the additional amount of $190,000, leaving a

7  remaining balance of $114,145.91, plus additional fees and costs incurred by the Reorganized

8  Debtor after entry of the Confirmation Order.  In early 2018, the Debtor made a substantial

9  partial payment on LNBYB's claim, and the Debtor made another substantial partial payment in

10  November 2019.  However, a substantial portion of LNBYB's claim remains unpaid.

11       **Post-Confirmation Taxes**

12       The Reorganized Debtor is unaware of any post-confirmation tax liabilities that have

13  accrued or come due, other than real property taxes on the Calabasas Property and Wisconsin

14  Property, which were paid in the ordinary course.

15       **Projections**

16       Funding of the Plan was based on a gift from the Reorganized Debtor's brother and not

17  cash derived from the operation of any business by the Debtor.

18       **Plan Consummation and Final Decree**

19       With the largest payments to CBT and Sunnyside having been made by performance on

20  the Settlements, the Reorganized Debtor submits that the Plan has been consummated.  The

21  Reorganized Debtor intends to file a motion for final decree after he has paid the remaining

22  outstanding fees to his bankruptcy counsel, LNBYB.

23  Dated: March 26, 2020                    MARK HANDEL

24

25                    By:___*/s/ John-Patrick M. Fritz*_____

26                      DAVID L. NEALE
                    JOHN-PATRICK M. FRITZ

27                      LEVENE, NEALE, BENDER, YOO
                      & BRILL L.L.P.

28                      Attorneys for Reorganized Debtor

Exhibit "3"  - Class 9 General Unsecured Creditors

(Exhibits 1 and 2 Intentionally Omitted)

| Creditor | PROPOSED TREATMENT OF | |
| | Proposed Unsecured Amount | Proposed Plan Payment |
|---|---|---|
| Adler Law, APC | $7,448.00 | $2.67 |
| AT&T | $542.54 | $0.19 |
| Bank of the West (Indy Mac) | $2,851,887.00 | $1,021.65 |
| Bendadon, Shapiro, Villalobos | $2,975.00 | $1.07 |
| Chase Slate | $29.99 | $0.01 |
| Citi Advantage | $78.29 | $0.03 |
| Comerica Bank | $3,599,927.00 | $1,289.63 |
| Comerica Bank | $8,288,295.00 | $2,969.17 |
| Comerica Bank | $8,065,660.00 | $2,889.42 |
| Comerica Bank | $6,892,065.00 | $2,468.99 |
| Farmers Insurance | $1,311.18 | $0.47 |
| Jack Benadon (Appian Group) | $24,711,940.00 | $8,852.72 |
| Jack Benadon (Indy Mac) | $2,781,239.00 | $996.34 |
| Jack Benadon (Korogluyan) | $2,000,000.00 | $716.47 |
| Jack Benadon (Korogluyan) | $600,000.00 | $214.94 |
| Jack Benadon (M Ghosn) | $845,348.49 | $302.83 |
| Jack Benadon (Weyerhauser) | $25,276,287.00 | $9,054.89 |
| Los Virgenes Water District | $817.97 | $0.29 |
| Time Warner Cable | $96.94 | $0.03 |
| Waste Management | $121.90 | $0.04 |
| Wisconsin Public Service | $34.83 | $0.01 |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL | $85,926,105.13 | $30,781.88 |

From:ADLER LAW 1818 222 4080 01/22/2009 16:27 #341 P.007/025

# EXHIBIT F

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Settlement Agreement" or "Agreement"), effective as of January 20, 2009, is made by and between Joshua Sabah, Daniel Sabah and Sunnyside Development Partners, LLC (collectively "Plaintiffs") on the one hand, and MWH Builders, Inc. ("MWH Builders"), MWH Development Corporation ("MWH Development"), Mark Handel ("Handel") and Steven Raft ("Raft") on the other hand (collectively the "Settling Defendants"). Collectively, for purposes of this Settlement Agreement, Joshua Sabah, Daniel Sabah, Sunnyside Development Partners, LLC, MWH Builders, MWH Development, Handel and Raft, shall be referred to hereinafter as the "Parties."

### RECITALS

This Settlement Agreement is executed with reference to the following facts:

A. WHEREAS, on or about August 3, 2007, Plaintiffs filed a complaint in the Los Angeles County Superior Court, Case No. BC375270 (hereinafter the "Action") asserting causes of action against defendants, including Handel, Raft, and MWH Builders;

WHEREAS Plaintiffs subsequently filed a First Amended Complaint which asserted causes of action against defendants, including Handel, Raft, and MWH Builders;

WHEREAS Plaintiffs subsequently filed a Second Amended Complaint which asserted causes of action against defendants, including Handel, Raft, MWH Builders and MWH Development;

WHEREAS Plaintiffs have previously dismissed BSB Design of California, Inc. ("BSB") from the Action.

B. The Parties to this Settlement Agreement desire, without any admission of any liability by any party, to settle and resolve their differences, and all disputes, rights and claims, and all bases for same, that exist or may exist between them as of the date of

1

*EXA /*

this Settlement Agreement, including but not limited to the claims set forth in the Action,
and therefore have elected to enter into this Settlement Agreement and to exchange the
promises, covenants, representations, warranties, and releases specified herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the Parties hereby covenant and agree as
follows:

## AGREEMENT

1.   **Handel, MWH Builders and MWH Development Agree to Pay Plaintiffs the
     Sum of $150,000, and Enter a Stipulation to Judgment in that Amount.**

Handel, MWH Builders and MWH Development have agreed to pay Plaintiffs the
sum of One Hundred and Fifty Thousand Dollars and no cents ($150,000.00) within three
hundred and sixty-seven (367) days of the date of Handel's execution of this Agreement,
as evidenced by the date-line corresponding to his signature line, pursuant to the terms set
forth below:

(a)      Simultaneously upon entering this Agreement and as additional security
for the payment obligation agreed to and set forth above, Handel, MWH Builders and
MWH Development shall enter into a Stipulation to Judgment upon the terms and
conditions set forth in the proposed Stipulation to Judgment attached hereto as Exhibit
"A" and incorporated herein by this reference. The proposed Stipulation to Judgment
shall be executed by the Parties simultaneously with the execution of this Settlement
Agreement. The agreed upon form of Judgment, pursuant to the terms of the Stipulation
to Judgment, is attached hereto as Exhibit "B." The Stipulation to Judgment provides in
pertinent part as follows:

(i)      Plaintiffs may have judgment entered against Handel, MWH
Builders and MWH Development in the sum of $150,000, plus all interest accrued from
January 20, 2009, at ten (10) percent per annum as of the date the judgment is filed, less
any payments made hereunder. In the event that Handel and/or Raft fails to timely

2

comply with the payments required under Sections 2(a), 2(b) and 2(c) of this Agreement, Plaintiffs shall have the right, but not the obligation, to obtain immediate entry of judgment by way of *ex parte* application. Pursuant to such application, Judgment shall be entered in the amount of $150,000.00, plus interest thereon at 10%, reduced by any payments made by Handel and/or Raft.

            (ii)    The Stipulation to Judgment shall not be filed and Judgment shall not be entered in the Action so long as there is no default regarding the payment obligations set forth in Sections 2(a), 2(b) and 2(c) of this Agreement.

    (b) In the event that the Settling Defendants default on any of the payment obligations set forth in Sections 2(a), 2(b) and 2(c) of this Agreement, Plaintiffs shall be entitled to file the Stipulation to Judgment with the Superior Court and Plaintiffs thereafter shall be entitled to the immediate entry of judgment against Handel, MWH Builders and MWH Development, jointly and severally, pursuant to the terms and conditions set forth in the Stipulation to Judgment.

**2.**    **Discount For Agreed Payment Schedule.**

    In the event that the Handel Initial Payment (defined below), the Raft Initial Payment (defined below), and the Handel Additional Payment (defined below) are all timely made pursuant to the terms set forth in 2(a), 2(b) and 2(c) below, the remaining balance of Handel, MWH Builders and MWH Development's $150,000.00 payment obligation (set forth in Section 1.) will be forgiven in full, along with any interest thereon.

    **(a)**    **Handel Initial Payment.**

    Handel shall pay Plaintiffs the sum of Sixty-Five Thousand Dollars and no cents ($65,000.00) within sixty (60) days from the date of Handel's execution of this Settlement Agreement (the "Handel Initial Payment"). This payment is to be made by certified cashier's check for immediately negotiable funds, payable to Sunnyside Development Partners, LLC, and delivered to the address contained in Section 20 herein no later than 5 P.M. on the date due. If Handel fails to pay Plaintiffs the sum of

3

$65,000.00, as stated above, within sixty (60) days from the date of Handel's execution of this Settlement Agreement, this Agreement shall be voidable in its entirety at the Plaintiffs' sole option, which would render the Agreement null and void ab initio, and Plaintiffs will have the uncontested right to re-activate the Action against all Parties, re-calendar the Action for trial, and re-open discovery in the Action.

    (b).    **Raft Initial Payment.**

Raft shall pay Plaintiffs the sum of Fifteen Thousand Dollars and no cents ($15,000.00) within sixty-two (62) days from the date of Handel's execution of this Settlement Agreement (the "Raft Initial Payment"). This payment is to be made by certified cashier's check for immediately negotiable funds, payable to Sunnyside Development Partners, LLC, and delivered to the address contained in Section 20 herein herein no later than 5 P.M. on the date due. If Raft fails to pay Plaintiffs the sum of ($15,000.00), as stated above, within sixty-two (62) days from the date of Handel's execution of this Settlement Agreement, this Agreement shall be voidable in its entirety at the Plaintiffs' sole option, which would render the Agreement null and void ab initio, and Plaintiffs will have the uncontested right to re-activate the Action against all Parties, re-calendar the Action for trial, and re-open discovery in the Action.

    (c).    **Handel Additional Payment.**

Handel shall pay Plaintiffs the additional sum of Fifteen Thousand Dollars and no cents ($15,000.00) within three hundred and sixty-five (365) days from the date of Handel's execution of this Settlement Agreement (the "Handel Additional Payment"). This payment is to be made by certified cashier's check for immediately negotiable funds, payable to Sunnyside Development Partners, LLC, and delivered to the address contained herein in Section 20 herein no later than 5 P.M. on the date due.

4

From:ADLER LAW                        1818 222 4080                01/22/2009 16:27       #341 P.011/025

**(d).     Plaintiffs Right to Enter Judgment.**

If either of the payment obligations in 2(a) or 2(b) are not made, Plaintiffs shall have the option and right either to file on an *ex parte* basis the Stipulation to Judgment with the Superior Court and Plaintiffs thereafter shall be entitled to the immediate entry of judgment against Handel, MWH Builders and MWH Development pursuant to the terms and conditions set forth in the Stipulation to Judgment, or Plaintiffs may elect to void the Settlement Agreement and reactivate the litigation, at their sole discretion. If Plaintiffs choose to exercise their option to void this agreement in its entirety and to reactivate litigation, Plaintiffs must exercise that option within 90 days of Handel or Raft's failure to timely satisfy a payment obligation set forth in 2(a) or 2(b).

Failure by Handel to timely satisfy the payment obligation in 2(c) will not give rise to an option by Plaintiffs to void the Settlement Agreement and reactivate the litigation, but if Handel does not timely satisfy the payment obligation in 2(c), Plaintiffs shall have the right to file on an *ex parte* basis the Stipulation to Judgment with the Superior Court and Plaintiffs thereafter shall be entitled to the immediate entry of judgment against Handel, MWH Builders and MWH Development pursuant to the terms and conditions set forth in the Stipulation to Judgment

**3.     Notice of Conditional Settlement and Subsequent Requests for Dismissal.**

(a).     Upon execution of this Settlement Agreement and the Stipulation to Judgment by all of the Parties, Plaintiffs shall file a Notice of Conditional Settlement in the Action and request that the Court retain jurisdiction under C.C.P. §664.6 until after all monetary obligations agreed upon in Section 2(a), 2(b) and 2(c) under this Agreement have been satisfied. It is the intent of the Parties that execution of this Agreement and the filing of the Notice of Conditional Settlement shall act as a "standstill agreement", preserving all Parties' rights to discovery without prejudice, should litigation in the Action be reactivated.

5

From: ADLER LAW          1818 222 4080          01/22/2009 16:27          #341 P.012/025

(b).     Upon timely satisfaction of the payment obligations under Sections 2(a) and 2(b) of this Agreement, Plaintiffs shall file a Request for Dismissal of the Action, with prejudice, as to Raft only.

(c).     Upon timely satisfaction of the all payment obligations under Sections 2(a), 2(b) and 2(c) of the Agreement, Plaintiffs shall file Requests for Dismissal of the Action, with prejudice, as to Handel, MWH Builders and MWH Development.

4.      Releases

(a)      Release of Raft by Plaintiffs.

In consideration of, and subject to, the promises and performances called for herein, and except for obligations created by this Settlement Agreement, Plaintiffs, on behalf of themselves and each of their predecessors, successors, affiliates and assigns, corporations, and each of their existing and former officers, directors, shareholders, partners, partnerships, members, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, and assigns, hereby forever release and discharge Raft and each of Raft's respective predecessors, successors, affiliates, and assigns, and each of his existing and former corporations, officers, directors, shareholders, members, partners, partnerships, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, attorneys, and assigns, from any and all obligations, claims, injuries, losses, demands, damages, debts, expenses, and causes of action of whatever kind or nature, including, without limitation, causes of action for indemnification and/or contribution, whether at law or equity, whether known or unknown, asserted or unasserted, suspected or unsuspected, pending or threatened, or fixed or contingent, that arise out of any matters from the beginning of time through the effective date of this Settlement Agreement, including but not limited to the matters set forth in the Action, or which could have been alleged in any action, arbitration or litigation based on the claims set forth in or arising out of the matters set

6

From: ADLER LAW          1818 222 4080          01/22/2009 16:28          #341 P.013/025

forth in the Action. This release shall not apply to any claims arising out of conduct occurring after execution of this Agreement.

    (b)    <u>Release of Handel, MWH Builders and MWH Development, by Plaintiffs.</u>

In consideration of, and subject to, the promises and performances called for herein, and except for obligations created by this Settlement Agreement, Plaintiffs, on behalf of themselves and each of their predecessors, successors, affiliates and assigns, corporations, and each of their existing and former officers, directors, shareholders, partners, partnerships, members, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, and assigns, hereby forever release and discharge Handel, MWH Builders and MWH Development and each of their respective predecessors, successors, affiliates, and assigns, and each of their existing and former corporations, officers, directors, shareholders, members, partners, partnerships, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, attorneys, and assigns, from any and all obligations, claims, injuries, losses, demands, damages, debts, expenses, and causes of action of whatever kind or nature, including, without limitation, causes of action for indemnification and/or contribution, whether at law or equity, whether known or unknown, asserted or unasserted, suspected or unsuspected, pending or threatened, or fixed or contingent, that arise out of any matters from the beginning of time through the effective date of this Settlement Agreement, including but not limited to the matters set forth in the Action, or which could have been alleged in any action, arbitration or litigation based on the claims set forth in or arising out of the matters set forth in the Action. This release shall not apply to any claims arising out of conduct occurring after execution of this Agreement

    (c)    <u>Release of Plaintiffs by Raft</u>

In consideration of, and subject to, the promises and performance called for herein, and except for obligations created by this Settlement Agreement, Raft on behalf of himself, and each of his predecessors, successors, affiliates and assigns, and each of

7

his existing and former officers, directors, shareholders, members, partners, partnerships, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, and assigns, hereby forever releases and discharges Plaintiffs and each of their respective predecessors, successors, affiliates, and assigns, and each of their existing and former officers, directors, shareholders, partners, partnerships, members, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, attorneys, and assigns, from any and all obligations, claims, injuries, losses, demands, damages, debts, expenses, and causes of action of whatever kind or nature, whether at law or equity, whether known or unknown, asserted or unasserted, suspected or unsuspected, pending or threatened, or fixed or contingent, that arise out of any matters from the beginning of time through the effective date of this Settlement Agreement, including but not limited to the matters set forth in the Action, or which could have been alleged in any action, arbitration or litigation based on the claims set forth in or arising out of the matters set forth in the Action.

(d)    Release of Plaintiffs by Handel, MWH Builders and MWH Development.

In consideration of, and subject to, the promises and performance called for herein, and except for obligations created by this Settlement Agreement, Handel, MWH Builders and MWH Development on behalf of themselves, and each of their predecessors, successors, affiliates and assigns, and each of its existing and former officers, directors, shareholders, members, partners, partnerships, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, and assigns, hereby forever release and discharge Plaintiffs and each of their respective predecessors, successors, affiliates, and assigns, and each of their existing and former officers, directors, shareholders, partners, partnerships, members, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, attorneys, and assigns, from any and all obligations, claims, injuries, losses, demands, damages, debts, expenses, and causes of action of whatever kind or nature, whether at

8

law or equity, whether known or unknown, asserted or unasserted, suspected or unsuspected, pending or threatened, or fixed or contingent, that arise out of any matters from the beginning of time through the effective date of this Settlement Agreement, including but not limited to the matters set forth in the Action, or which could have been alleged in any action, arbitration or litigation based on the claims set forth in or arising out of the matters set forth in the Action.

(e)     Mutual Releases Among and Between the Settling Defendants, Raft, Handel, MWH Builders and MWH Development.

In consideration of, and subject to, the promises and performance called for herein, and except for obligations created by this Settlement Agreement, each of the Settling Defendants, Raft, Handel, MWH Builders and MWH Development, on behalf of themselves, and each of their predecessors, successors, affiliates and assigns, and each of their existing and former officers, directors, shareholders, members, partners, partnerships, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, and assigns, hereby forever release and discharge each and every other of the Settling Defendants, and each of the Settling Defendants' respective predecessors, successors, affiliates, and assigns, and each of their existing and former officers, directors, shareholders, partners, partnerships, members, employees, servants, agents, heirs, executors, administrators, personal representatives, trustees, trusts, attorneys, and assigns, from any and all obligations, claims, injuries, losses, demands, damages, debts, expenses, and causes of action of whatever kind or nature, whether at law or equity, whether known or unknown, asserted or unasserted, suspected or unsuspected, pending or threatened, or fixed or contingent, that arise out of any matters from the beginning of time through the effective date of this Settlement Agreement, including but not limited to the matters set forth in the Action, or which could have been alleged in any action, arbitration or litigation based on the claims set forth in or arising out of the matters set forth in the Action.

9

(f)     Reserved Claims

Notwithstanding anything to the contrary in this Agreement, including without limitation the releases given herein, the Parties hereby specifically reserve and except from such releases any and all obligations or rights imposed or created, by this Settlement Agreement.

(g)     Waivers of Rights Under California Civil Code Section 1542

Each party giving a release in this Settlement Agreement hereby acknowledges to each releasee benefiting from said release that such releasor is represented by counsel or has been afforded an opportunity to be represented by counsel, and has been advised of, and is familiar with the following provisions of California Civil Code Section 1542:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
> TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE
> MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
> DEBTOR."

To the extent the releases herein include a release of unknown claims, each releasor hereby acknowledges that such releasor hereby voluntarily waives any and all rights such releasor has or may have under said Section 1542, and under any other statute or common law principle having substantially the same purpose and effect as Section 1542 with respect to the release of unknown claims.

(h)     Governing Law

Titles or captions contained in this Settlement Agreement are used for convenience and reference only, and are not intended to and shall not in any way enlarge, define, limit, extend or describe the rights or obligations of the parties or affect the meaning or construction of this Settlement Agreement, or any provisions hereof. Because each party has had the assistance of counsel or the opportunity to consult counsel of

10

its/his choosing, the normal rule of construction to the effect that any ambiguities in this Settlement Agreement are to be resolved against the drafting party shall not be employed in the interpretation of this Settlement Agreement. Each party understands and hereby agrees that this Settlement Agreement is entered into under, and shall be construed under and governed by the laws of the State of California.

5.   **Agreement Regarding BSB and Beazer Homes Holding Corp.**

(a)   The Parties are aware that BSB has asserted an ownership interest in the floor plans and elevations that were used to obtain the Tentative Tract Map Approvals for the Shields property (the "TTM Plans"), as set forth in the Second Amended Complaint in the Action. Plaintiffs hereby agree that they shall not use the TTM Plans to obtain building permits nor for the construction of homes without obtaining prior written permission from BSB.

(b)   In the event of a beach of Section 5(a) by Plaintiffs, Settling Defendants shall not be excused or released from any obligation under this Agreement, and shall be limited in their remedy to the following: Plaintiffs shall indemnify, hold harmless and provide a defense to Settling Defendants from legal action brought by BSB, but only if Plaintiffs in fact use the TTM Plans to obtain building permits, or for the construction of homes, without obtaining prior written permission from BSB.

(c)   If BSB initiates any legal action against Plaintiffs resulting from Handel, MWH Development and/or MWH Builder's alleged use of BSB's work product, including but not necessarily limited to using BSB's work product to obtain the Shield's Tentative Tract Map entitlements, then Handel, MWH Development, and MWH Builders and each of them, shall indemnify, hold harmless, and provide a defense for Plaintiffs in such action brought by BSB.

11



(d)    Plaintiffs agree to dismiss Beazer Homes Holding Corp. within 14 days of execution of this Settlement Agreement.

6.    **Jurisdiction**

Any action or proceeding arising out of this Settlement Agreement shall be brought exclusively in the Los Angeles County Superior Court, which shall be deemed to have jurisdiction over the parties. The Los Angeles County Superior Court shall retain jurisdiction over this Settlement Agreement in the Action pursuant to California Code of Civil Procedure §664.6.

7.    **Breach or Failure to Perform**

The obligations of the parties hereunder are expressly conditioned upon the performance of and the obligations of each other, except as otherwise provided herein.

8.    **Attorney's Fees**

In the event further legal activity ensues in connection with the enforcement of this Settlement Agreement, the prevailing party in such proceeding shall be entitled to recover all reasonable costs and expenses incurred by such party in connection therewith, including, without limitation, reasonable attorney's fees.

9.    **Advice of Counsel**

All parties hereto acknowledge that in executing this Settlement Agreement, each is acting upon its, his, or her own independent judgment, and/or upon the advice of independent counsel without any representations, express or implied, or any kind or nature whatsoever which are not specifically set forth in this Settlement Agreement.

10.    **Binding Effect/Non-Assignment**

This Settlement Agreement is binding upon the heirs, executors, administrators, successors, assigns, and all related entities of each of the parties hereto.

11.    **Counterparts/Fax Signatures**

This Settlement Agreement may be executed in counterparts and each counterpart hereof shall be considered a part of the single instrument. Each of the parties hereto shall

12

From: ADLER LAW          1818 222 4080          01/22/2009 16:28     #341 P.019/025

sign a sufficient number of counterparts so that each party will receive a fully executed original of the Settlement Agreement. The Settlement Agreement may be executed with facsimile signatures with original signature pages to be provided forthwith. A facsimile signature shall be deemed binding as if it were an original, pending receipt of original signatures.

12.   **Voluntary Agreement**

The parties hereto, and each of them, represent and declare that they have carefully read this Settlement Agreement and know the contents thereof and that they signed the same freely and voluntarily.

13 .   **Severability**

If any provisions of this Settlement Agreement or the application thereof are held invalid, the invalidity shall not affect other provisions or applications of this Settlement Agreement, which can be given effect without the invalid provisions or application, and to this end the provisions of this Settlement Agreement are declared to be severable.

14.   **Entire Settlement Agreement**

All agreements, covenants, representations and warranties, express and implied, oral and written, of the parties hereto concerning the subject matter hereof are contained herein. No other agreements, covenants, representations, or warranties, express or implied, oral or written, have been made by any party hereto to any other party concerning the subject matter hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter hereof are merged herein. This is an integrated agreement.

15.   **Cooperation**

Each party hereby agrees that, at the reasonable request of any other party, such party shall take such actions, including the execution and delivery of further instruments and documents, as reasonably may be necessary to carry out this Settlement Agreement, and to secure to all parties the full and complete enjoyment of their respective rights and

13

privileges hereunder; provided, however, that such duty of cooperation shall be without unreasonable expense to the party to whose cooperation has been requested.

16.  **Effective Date**

This Settlement Agreement shall be effective as of January 20, 2009. However, this Settlement Agreement is null and void unless signed by all of the Parties. This Settlement Agreement contemplates that, after it is executed and delivered, certain actions required hereunder shall remain to be performed. Such events are not conditions precedent or subsequent to the legal effectiveness of the Settlement Agreement, or to the enforceability of the rights granted to, or the obligations assumed by the parties hereunder. This is expressly subject, however, to the terms in 2(a) and 2(b) herein, providing that if Plaintiffs do not timely receive both the Handel Initial Payment and the Raft Initial Payment, this Agreement shall be voidable in its entirety, at the sole option of Plaintiffs.

17.  **Non-Admission of Liability or Wrongdoing**

The Parties hereto understand, acknowledge and agree that this is a compromise and settlement of disputed claims, and that this Settlement Agreement shall not be deemed to be or construed to be an admission of liability or of the existence of any obligation of any kind whatsoever by any party in favor of or against the other party.

18.  **Warranties**

Each party to this Settlement Agreement hereby represents and warrants to each other party that he/she/it is the true owner of the claims released herein, and that he/she/it has not assigned or transferred to any third party any of the claims released herein, and that the persons and entities signing this Settlement Agreement on their respective behalves are duly authorized to enter into this Settlement Agreement and to give the releases set forth in this Settlement Agreement. Each party to this Settlement Agreement further agrees that, in the event of any cause of action, claim, demand, debt, liability,

14

account or obligation arising out of any claim released herein is alleged, filed or asserted

by any assignee or transferee of any party to this Settlement Agreement, the party

claimed to have assigned, transferred or conveyed said claim agrees to indemnify and

hold harmless each party released under this Settlement Agreement, from and against

such claim, including without limitation all damages, losses, settlements, costs, and

expenses, including actual attorneys' fees, arising out of, relating to, or connected with

said claim. The Parties further covenant and agree not commence or prosecute any future

actions or proceedings based upon the facts, claims, demands, causes of action,

obligations, damages or liabilities raised in the Action or which the parties may have or

claim to have based upon events or acts, errors or omissions occurring prior to the

effective date of this Agreement.

19.    **Confidentiality.**

      The amount and terms of this Agreement are confidential.  The Parties and their

counsel expressly understand and agree that it shall constitute a breach of this Agreement

to disclose or communicate the amount or the terms of the settlement or to disseminate

this Agreement, except to the extent required by law, or to the extent required by valid

legal process, or to the extent necessary to enforce or effectuate the terms set forth in any

provision of this Agreement.  If asked about the settlement, the parties may only respond

with "no comment," or with the statement that "the litigation has been settled and

dismissed," or words to that effect.  Nothing in this paragraph limits disclosure as

reasonably necessary to the parties' attorneys, insurers, prospective insurers, tax advisors,

lenders, immediate family members or as disclosure may be required to other

professionals in the ordinary course of business.

20.    **Notices**

      Any notices or payments hereunder shall be given by addressing them to the

addresses set forth below (or at such other address or addresses as may be designated by

written notice given in the manner described in this paragraph) and by sending them by

15

From:ADLER LAW                1818 222 4080          01/22/2009 16:29     #341 P.022/026

third party messenger, registered or certified mail, return receipt requested. Any notices

of default shall also be sent via overnight mail to the addresses and numbers listed below:

If to Sunnyside Development Partners, LLC,
Daniel Sabah and/or Joshua Sabah:
15230 Burbank Blvd., Suite 108
Van Nuys, CA 91411

With copy to:
The Sall Law Firm
32351 Coast Highway
Laguna Beach, CA 92651


If to Steven Raft:
22860 Sparrowdell Drive
Calabasas, CA  91302


If to MWH Builders, Inc.:
22440 Clarendon St., #103
Woodland Hills, CA 91367

With copy to:
Robert C. Adler, Esq.
Adler Law, A Professional Corporation
22440 Clarendon St., #101
Woodland Hills, CA 91367


If to Mark Handel and/or MWH Development Corporation:
22440 Clarendon St., #103
Woodland Hills, CA 91367

With copy to:
Richard Goor, Esq.
Spile, Siegal, Leff & Goor
16501 Ventura Boulevard, Suite 610
Encino, CA  91436

16

01/20/2009   15:28     8187862871                    SYNERGY                                    PAGE   02

In witness whereof, each of the undersigned has entered into this Agreement as of the date set forth above.

Dated: January 20, 2009

_____
Daniel Sabah

Dated: January 29 2009

_____
Joshua Sabah

Dated:  January 29 2009

Sunnyside Development
Partners, LLC

By: _____
Signature

_____
Print

Dated: January ___, 2009

_____
Steven Raft

Dated: January ___, 2009

_____
Mark Handel

17

In witness whereof, each of the undersigned has entered into this Agreement as of the date set forth above.

Dated: January __, 2009

_____
Daniel Sabah


Dated: January __, 2009

_____
Joshua Sabah


Dated: January __, 2009                        **Sunnyside Development Partners, LLC**

By:    _____
Signature

_____
Print


Dated: January 20, 2009

_____
Steven Raft


Dated: January __, 2009

_____
Mark Handel


17

From: ADLER LAW                         1818 222 4080              01/22/2009 16:29        #341 P.023/025

In witness whereof, each of the undersigned has entered into this Agreement as of the
date set forth above.

Dated: January __, 2009

_____
Daniel Sabah

Dated: January __, 2009

_____
Joshua Sabah

Dated: January __, 2009                 Sunnyside Development
                                        Partners, LLC

                              By:       _____
                                        Signature

                                        _____
                                        Print

Dated: January __, 2009

_____
Steven Raft

Dated: January 22, 2009

_____
Mark Handel

17

Dated: January ___, 2009

MWH Builders, Inc.

By: _____
Signature

_____
Print

Dated: January ___, 2009

MWH Development Corporation.

By: _____
Signature

_____
Print

APPROVED AS TO FORM:

Dated: January ___, 2009

THE SALL LAW FIRM
A Professional Corporation

By: _____
ROBERT K. SALL
BRANDON N. KRUEGER
Attorneys for Plaintiffs Sunnyside
Development Partners, LLC, Daniel
Sabah and Joshua Sabah

18

Dated: January ___, 2009                    MWH Builders, Inc.

                                     By:    _____
                                            Signature

                                            _____
                                            Print

Dated: January ___, 2009                    MWH Development Corporation.

                                     By:    _____
                                            Signature

                                            _____
                                            Print

APPROVED AS TO FORM :

Dated: January 22 2009                      THE SALL LAW FIRM
                                            A Professional Corporation

                                     By:    _____
                                            ROBERT K. SALL
                                            BRANDON N. KRUEGER
                                            Attorneys for Plaintiffs Sunnyside
                                            Development Partners, LLC, Daniel
                                            Sabah and Joshua Sabah

18

Dated: January ___, 2009

SPILE, SIEGAL, LEFF & GOOR

By: _____

RICHARD GOOR
Attorneys for Defendants Mark
Handle and MWH Development
Corporation

Dated: January ___, 2009

ADLER LAW
A Professional Corporation

By: _____

ROBERT ADLER
Attorneys for Defendants MWH
Builders, Inc.

19

Dated: January __, 2009                          SPILE, SIEGAL, LEFF & GOOR

By: _____
RICHARD GOOR
Attorneys for Defendants Mark
Handle and MWH Development
Corporation


Dated: January __, 2009                          ADLER LAW
A Professional Corporation

By: _____
ROBERT ADLER
Attorneys for Defendants MWH
Builders, Inc.


19