1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
4  Assistant United States Attorney
   Public Corruption and Civil Rights Section
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone:  (213) 894-8452
7       Facsimile:  (213) 894-0141
        E-mail:     thomas.rybarczyk@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 UNITED STATES OF AMERICA,        No. CR 20-00612(A)-ODW

13          Plaintiff,              OPPOSITION TO MOTION OF NON-PARTY
                                    LOS ANGELES TIMES COMMUNICATIONS
14          v.                      LLC TO INTERVENE AND UNSEAL

15 MARK HANDEL,                     Hearing Date: September 30, 2024
                                    Hearing Time: 10:00 a.m.
16          Defendant.              Location:    Courtroom of the Hon.
                                                 Otis D. Wright, II
17

18

19       Plaintiff United States of America, by and through its counsel

20 of record, the United States Attorney for the Central District of

21 California and Assistant United States Attorney Thomas F. Rybarczyk,

22 hereby files its Opposition to Motion of Non-Party Los Angeles Times

23 Communications LLC to Intervene and Unseal.

24 ///

25 ///

26 ///

27

28

FILED
CLERK, U.S. DISTRICT COURT

9/9/24

CENTRAL DISTRICT OF CALIFORNIA
BY:_____SE_____DEPUTY

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: September 9, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

I.   INTRODUCTION..................................................1

II.  STATEMENT OF FACTS............................................3

     A.   The Investigation and Indictment........................3

     B.   Defendant's Motion to Compel............................4

     C.   Defendant's Sentencing..................................7

     D.   The Applicant and Government Met and Conferred
          Regarding the Sealed Materials..........................8

III. ARGUMENT......................................................9

     A.   There Is No Qualified Right of Access to the MTC
          Materials...............................................9

          1.   There Is No First Amendment Qualified Right of
               Access to the MTC Materials.......................10

          2.   There Is No Common-Law Qualified Right of Access
               to the MTC Materials..............................12

          3.   There Is No Qualified Right of Access to the
               Wiretap Materials, Investigative Reports, and
               Interview Transcripts.............................13

     B.   Compelling Reasons and Governmental Interests Exist to
          Redact Any Unsealed MTC Materials and Sentencing
          Materials..............................................15

          1.   Uncharged Subjects Have Compelling Privacy,
               Reputational, and Due Process Interests that
               Warrant Redacting Their Names/Identities..........16

          2.   There Are Compelling Reasons to Protect the
               Identities of Individuals Who Cooperated in the
               Federal Investigation.............................19

          3.   Compelling Reasons Exist to Redact Any Sensitive
               Law Enforcement Techniques........................21

          4.   Victim Information Should be Redacted..............21

          5.   Individuals' Personal Identifying Information
               Should Be Redacted................................22

IV.  CONCLUSION...................................................23

i

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                      <u>PAGE</u>

3

**CASES**

4
<u>90, Exit 514, S. of Billings, Mont.</u>,
5
   658 F.3d 1188 (9th Cir. 2011) ............................. 15, 18, 19

6
<u>Activision Publ'g, Inc. v. EngineOwning UG</u>,
7
   No. CV222CV00051MWFJCX, 2023 WL 2347134 (C.D. Cal. Feb. 27, 2023) 23

8
<u>Associated Press v. U.S. Dist. Ct. for Cent. Dist. of Cal.</u>,
   705 F.2d 1143 (9th Cir. 1983) ..................................... 10

9
<u>Bridgestone/Firestone, Inc.</u>,
10
   263 F.3d 1304 (11th Cir. 2001) .................................... 11

11
<u>Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.</u>,
12
   No. CV 20-672-RSWL-EX, 2021 WL 7708484 (C.D. Cal. Apr. 14, 2021) . 22

13
<u>Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Maile</u>,
   No. 23-15108, 2024 WL 3958954 (9th Cir. Aug. 28, 2024) ........... 9

14
<u>Ctr. for Auto Safety v. Chrysler Grp., LLC</u>,
15
   809 F.3d 1092 (9th Cir. 2016) .................................... 12

16
<u>Heineke v. Santa Clara Univ.</u>,
17
   CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) .......... 12

18
<u>In re City of New York</u>,
   607 F.3d 923 (2d Cir. 2010) ...................................... 21

19
<u>In re Press Application for Access to Jud. Recs. in Case No. 23-SC-</u>
20
<u>31</u>,
   No. MC 23-84 (JEB), 2023 WL 8254630, (D.D.C. Nov. 29, 2023) ...... 17

21

22
<u>In re Granick</u>,
   388 F. Supp. 3d 1107 (N.D. Cal. 2019) ................... 14, 17, 21

23
<u>In re Granick</u>,
24
   No. 16-MC-80206-KAW, 2018 WL 7569335, at *11 (N.D. Cal. Dec. 18,
   2018) ............................................................ 14

25

26
<u>In re Los Angeles Times Commc'ns LLC</u>,
   628 F. Supp. 3d 55 (D.D.C. 2022) ................................. 20

27
<u>In re New York Times Co. to Unseal Wiretap & Search Warrant</u>
28
<u>Materials</u>,
   577 F.3d 401 (2d Cir. 2009) ...................................... 14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                  PAGE

In re New York Times Co.,
  No. MC 21-91 (JEB), 2021 WL 5769444 (D.D.C. Dec. 6, 2021) .... 17, 20

In re Time Inc.,
  182 F.3d 270 (4th Cir. 1999) ..................................... 11

Kamakana v. City & Cnty. of Honolulu,
  447 F.3d 1172 (9th Cir. 2006) ........................... 12, 13, 15

Mahone v. Amazon.com, Inc.,
  No. C22-594 MJP, 2024 WL 965139 (W.D. Wash. Mar. 6, 2024) ....... 22

Matter of the Application of WP Co. LLC,
  201 F. Supp. 3d 109 (D.D.C. 2016) ................... 16, 17, 18, 19

Jones v. PGA Tour, Inc.,
  No. 22-CV-04486-BLF, 2023 WL 5520771, (N.D. Cal. Aug. 24, 2023) .. 13

Press Enterprise Co. v. Superior Court,
  478 U.S. 1 (1986) ....................................... 9, 10, 15

Reflex Media, Inc. v. Doe No. 1,
  218CV02423RFBBNW, 2022 WL 2985938 (D. Nev. July 28, 2022) ....... 23

Richards v. Cox,
  No.16CV01794JCMBWN, 2019 WL 2518110 (D. Nev. June 18, 2019) ..... 22

Richmond Newspapers, Inc. v. Virginia,
  448 U.S. 555 (1980) ............................................. 9

Roviaro v. United States,
  353 U.S. 53 (1957) ............................................. 19

Times Mirror Co. v. United States,
  873 F.2d 1210 (9th Cir. 1989) .............................. 10, 16

United States v. Anderson,
  799 F.2d 1438 (11th Cir. 1986) ................................. 11

United States v. Blagojevich,
  662 F. Supp. 2d 998 (N.D. Ill. 2009) .......................... 14

United States v. Carpenter,
  923 F.3d 1172 (2019) .......................................... 10

1

<b>TABLE OF AUTHORITIES (CONTINUED)</b>

2

<u>DESCRIPTION</u>                                                                          <u>PAGE</u>

3

<u>United States v. Gonzales</u>,
    150 F.3d 1246 (10th Cir. 1998) ................................... 11

4

5

<u>United States v. Hubbard</u>,
    650 F.2d 293 (D.C. Cir. 1980) .................................... 21

6

<u>United States v. Kravetz</u>,
7   706 F.3d 47 (1st Cir. 2013) ............................. 10, 11, 12

8

<u>United States v. Miske</u>,
    No. 19-cr-00099, 2022 WL 1073797 (D. Haw. Apr. 8, 2022) .......... 13

9

10

<u>United States v. Nickens</u>,
    809 F. App'x 584 (11th Cir. 2020) .............................. 10

11

12

<u>United States v. Rigmaiden</u>,
    844 F. Supp. 2d 982 (D. Ariz. 2012) ............................ 21

13

<u>United States v. Sleugh</u>,
14   896 F.3d 1007 (9th Cir. 2018) ....................... 9, 11, 12, 13

15

<u>United States v. Wecht</u>,
    484 F.3d 194 (3d Cir. 2007) .................................... 12

16

17

**STATUTES**

18

18 U.S.C. § 152.................................................... 7

19

18 U.S.C. § 3771................................................... 22

20

18 U.S.C. § 7206................................................... 7

21

**RULES**

22

Federal Rule of Civil Procedure 5.2............................... 23

23

Federal Rule of Criminal Procedure 49.1.......................... 23

24

25

26

27

28

iv

1              <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3         In November 2023, defendant MARK HANDEL ("defendant"), a real

4    estate developer, was convicted of bankruptcy and tax fraud and

5    sentenced to 41 months' imprisonment.  The government first learned

6    about defendant's fraud during a wiretap investigation of public

7    officials that started in July 2014.  This investigation did not

8    result in charges against those public officials.  The indictment

9    charging defendant focused on his bankruptcy fraud and money

10   laundering, making only passing reference to his political

11   fundraising and how he sought to use that fundraising to gain access

12   and influence over politicians.  Other than in the filings and

13   proceeding associated with defendant's motion to compel discovery and

14   a few passing references during his sentencing, defendant's

15   intersection with these public officials had little relevance to

16   defendant's case, other than proving that he was in fact working as a

17   real estate developer and earning income contrary to his sworn

18   assertions.  No public officials were alleged to be co-conspirators

19   or alleged to have helped facilitate defendant's fraud.

20        Despite the limited role the public officials played in the

21   litigation in defendant's case, the Los Angeles Times Communications

22   LLC (the "Applicant") seeks to unseal select materials filed under

23   seal in this case that the Applicant suspects -- sometimes

24   incorrectly -- touch upon the government's public corruption

25   investigation that resulted in those officials not being charged, nor

26   even being named as co-conspirators' in defendant's bankruptcy and

27   tax fraud case.  (Applicant's Mem. of Points & Authorities in Support

28   of Motion to Intervene and Unseal (hereinafter, "Mot.").)

Specifically, the Applicant seeks: (1) pleadings, exhibits, and sealing materials associated with defendant's motion to compel (dkts. 59, 61, 70-73, 77-78 (collectively, the "MTC Materials"[1]); and (2) the government's sealed sentencing exhibits (dkt. 125) (the "Sentencing Exhibits," collectively with the MTC Materials, the "Sealed Materials").[2]

This Court should deny the Applicant's motion with respect to the MTC Materials and permit the government to make the redactions requested below.[3]  First, the MTC Materials are discovery materials that are not subject to the qualified right of access granted to the public and press under the First Amendment or common law. Accordingly, materials such as the wiretap materials, including linesheets, investigative reports, and an interview transcript do not transform from material that is otherwise not subject to a qualified right of access into material that is merely by its attachment to a discovery motion.  Second, for any material this Court deems subject to a qualified right of access, this Court should permit the government to make redactions of that material to protect: (1) the uncharged subjects of that investigation who face concrete privacy,

---

[1] As discussed more fully below, the government does not oppose the unsealing of the bankruptcy-related filings or the sealing order, and, subject to the requested redactions discussed below in Section III.B, does not oppose the unsealing of discovery letters.  The government also does not oppose the unsealing of the warrant applications filed at Exhibits G and H at Docket #61, subject to the requested redactions detailed in Section III.B below.  Accordingly, for purposes of this opposition, references to the MTC Materials do not include those items.

[2] As discussed more fully below, the government no longer opposes unsealing the non-grand jury-related materials filed with its sentencing position, subject to the proposed redactions discussed below in Section III.B.

[3] As the government informed the Applicant, it does not oppose its standing for the purposes of this case only.  (Mot., p. 5.)

reputational, and due-process concerns; (2) confidential sources and
cooperating third-party witnesses; (3) and any descriptions of
confidential investigative techniques, which if disclosed could
impact future federal criminal investigations; (4) victim
information; and (5) individual personal identifying information.[4]
Redacting the information for these compelling reasons strikes a
reasonable balance between any qualified right of access the public
and media may have against important governmental and third-party
interests.

## II.    STATEMENT OF FACTS

### A.    The Investigation and Indictment

Beginning around July 2014, the government started an
investigation involving cooperating individuals into allegations of
public corruption that led to lawful wiretap orders.  In reviewing
the intercepted calls, investigators heard defendant discussing his
real estate business and his use of his accountant as a straw donor
for campaign contributions as well as for his real estate development
companies.  As part of the government's investigation of defendant,
it obtained two search warrants for his email accounts.
Investigators also learned that defendant filed for bankruptcy in
April 2015 and made several false statements, including that he had
not worked or earned an income since 2008.

In 2020, defendant was charged with bankruptcy fraud and money
laundering relating to his personal bankruptcy case.  The indictment

---

[4] Should this Court order the unsealing any materials in dispute
here, the government respectfully requests that this Court give the
government six weeks to redact the materials and inform affected
parties about the impending disclosures.  Excluding the grand jury
materials, the filings and exhibits consist of 665 pages of documents
that will require careful review and redactions.

3

alleged defendant concealed assets through numerous corporations and entities for which he used Individual A, Individual B (his accountant), and his wife as nominee partners, managers, and owners. (Dkt. 1, ¶¶ 5-7.)  To conceal these assets, defendant made numerous false statements in his bankruptcy proceeding, including that defendant had not worked or earned an income since 2008.  (Id. ¶¶ 16, 22.)  The indictment alleged he had been working as a real estate developer of residential and commercial properties, which required him to work with government officials and politicians.  (Id. ¶ 2.) To curry favor and gain influence over those politicians for his real estate work, defendant would bundle campaign contributions for those politicians, (id. ¶ 3), a practice the government learned defendant engaged in during the investigation described above.

When the government sought and obtained the indictment, it contemporaneously filed a memorandum that indicated defendant's case was a matter that was pending in the United States Attorney's Office ("USAO") on or before August 8, 2014, the date the Honorable André Birotte Jr. resigned from his position as the United States Attorney for the Central District of California.  (Dkt. 3.)  Later, the case was assigned to Judge Birotte who recused himself based on the government's representation.  (Dkt. 8.)  The case was then reassigned to this Court.  (Id.)

**B.  Defendant's Motion to Compel**

Without meeting and conferring with the government, on November 25, 2021, defendant filed a motion to compel specific discovery. (Dkt. 61.)  Among defendant's arguments for seeking additional discovery was that the government falsely represented that his case was a matter pending in the USAO when Judge Birotte was the United

4

States Attorney.  In support of his motion, defendant filed under seal the following 19 exhibits:

| Ex. | General Description |
|-----|---------------------|
| A | FBI Surveillance Log |
| B | Defendant Discovery Letter |
| C | Government's Email Response to Defendant Discovery Letter |
| D | Defendant's Second Discovery Letter |
| E | Government's Email Response to Second Discovery Letter |
| F | Pen Register Application |
| G | Search Warrant Application |
| H | Search Warrant Application |
| I | FBI Evidence Log Documenting a Recorded Interview |
| J | FBI Evidence Log Documenting a Recorded Interview |
| K | Defendant's Bankruptcy Petition |
| L | Defendant's Bankruptcy Hearing Transcript |
| M | Defendant's Amended Bankruptcy Petition |
| N | Materials Related to FBI Investigative Activity |
| O | FBI Report and Attachments |
| P | FBI Physical Surveillance Logs |
| Q | FDIC Office of Inspector General Report |
| R | Purchase and Assumption Agreement for California Bank & Trust |
| S | FBI Interview Report |

The government filed its response less than a week later and argued that defendant failed to meet and confer. (Dkt. 62.)  The parties then met and conferred, and the government produced additional discovery.  (Dkt. 67.)  On March 2, 2022, defendant filed a supplemental motion in which he indicated the only area of

additional discovery he sought related to the government's
representation that his case was a matter pending in the USAO prior
to August 8, 2014.  (Id.)

On March 7, 2022, the government filed its opposition under
seal.  (Dkt. 72.)  The government also filed the following seven
exhibits under seal:

| Ex. | General Description |
|-----|---------------------|
| 1 | Wiretap Linesheet |
| 2 | Wiretap Linesheet |
| 3 | Government Response to Defendant's Second Discovery Letter |
| 4 | Excerpts from a Wiretap Application |
| 5 | Excerpts from a Wiretap Application |
| 6 | Excerpts from a Wiretap Application |
| 7 | Transcript of an Interview of Defendant |

(Dkt. 73.)  These exhibits demonstrated that contrary to defendant's
allegations, the investigation that led to defendant's charges
started in July 2014 while Judge Birotte was the United States
Attorney.

On March 14, 2022, defendant filed his reply in support of his
motion under seal along with Exhibit T, a wiretap application.
(Dkts. 77-78.)  Defendant's sealing application stated that his reply
and exhibit contained "sensitive, confidential information on law
enforcement's investigation into politicians and their staffers, at
least some of which is not public knowledge."  (Dkt. 75.)
Defendant's counsel further argued that public disclosure of "these
documents would harm my client irreparably and make public

6

1  potentially sensitive information about both my client and targets of
2  a government investigation." (Id.)

3      On March 28, 2022, the Court denied defendant's motion to compel
4  for failure to comply with the Local Rules. (Dkt. 81.[5])  Defendant
5  did not file any further motions to compel.

6      **C.  Defendant's Sentencing**

7      On February 23, 2023, defendant pled guilty to a first
8  superseding information charging him with a False Statement in
9  Bankruptcy, in violation of 18 U.S.C. § 152(3), and Subscribing to a
10  False Tax Return, in violation of 18 U.S.C. § 7206(1).  (Dkt. 106.)

11      In preparation for defendant's sentencing, the government filed
12  a sentencing position, which did not mention defendant's involvement
13  with public officials and instead focused on his fraudulent conduct.
14  (Dkt. 119.)  In connection with that sentencing position, the
15  government filed the following six exhibits under seal:

| Ex. | General Description |
|-----|---------------------|
| 1 | Transcript of Grand Jury Testimony and Exhibits |
| 2 | FBI Report of Interview |
| 3 | Internal Revenue Service-Criminal Investigation ("IRS-CI") Memorandum of Interview |
| 4 | Declaration of IRS-CI Special Agent Ashley Braver |
| 5 | FBI Report of Interview |
| 6 | Transcript of Grand Jury Testimony and Exhibits |

---

[5] The Applicant has uploaded a 32 second clip of the hearing to
a website.  (Mot., p. 2.)  It appears to be a clip from the larger
proceeding because it does not include the parties' appearances.  The
government does not have a copy of the full recording, and the
Applicant has not provided it.  Given the passage of time, the
government is uncertain what else, if anything, was said during the
hearing.

7

The sealed FBI or IRS-CI reports focus on defendant's fraud and are summaries of interviews of third-party witnesses, namely, one of defendant's business partners and two employees of defendant's accountant. Similarly, the agent declaration summarized her review of the Internal Revenue Service ("IRS") form Schedule K-1s for the entities defendant used to shield his income from his creditors and the IRS, which is clear from the government's sentencing position. (Dkt. 119, pp. 3-4, 11.)

On November 14, 2023, following a multiple hour sentencing hearing, defendant was sentenced to 41 months' imprisonment. (Dkt. 141.)

### D.    The Applicant and Government Met and Conferred Regarding the Sealed Materials

On August 1, 2024, the Applicant informed the government via email that they intended to move to unseal the Sealed Materials. The parties then met and conferred on August 15, 2024 and August 26, 2024. (Mot., p. 5.) For the purposes of this case alone, and in an effort to reach a resolution and reduce the number of issues this Court must decide, the government agreed not to oppose the outright unsealing of certain documents and to unseal others subject to the categories of redactions proposed below in Section III.B.[6] (Mot., pp. 5-6.) Other than agreeing not to seek the grand jury

---

[6] As described in the accompanying proposed order, the government does not oppose the outright unsealing of Exhibits C, E, K, L, M, Q, and R filed at Docket #61 and the Order Sealing Documents filed at Docket #71. Further, the government does not oppose the unsealing of Exhibits B and D filed Docket #61 and Exhibit 3 filed at Docket #73, provided the government is permitted to make the requested redactions detailed in Section III.B. below to these materials.

8

1    transcripts, the Applicant did not agree to any of the proposed

2    redactions suggested by the government.

3         At this time, in an additional an effort to preserve the Court's

4    and parties' resources further, the government no longer opposes

5    unsealing the non-grand jury materials filed in connection with its

6    sentencing position, namely, Exhibits 2-5 filed at Docket #125,

7    provided it is permitted to redact those materials consistent with

8    the requested redactions in Section III.B.  The government also does

9    not oppose the unsealing of the warrant applications filed at

10   Exhibits G and H at Docket #61, subject to the requested redactions

11   detailed in Section III.B below.

12   **III. ARGUMENT**

13        **A.    There Is No Qualified Right of Access to the MTC Materials**

14        The First Amendment and common law provide the public and press

15   with a qualified right of access to criminal trial proceedings and

16   certain judicial records.  See <u>Richmond Newspapers, Inc. v. Virginia</u>,

17   448 U.S. 555 (1980) (First Amendment right to attend criminal

18   trials); <u>Press Enterprise Co. v. Superior Court</u>, 478 U.S. 1, 7-9

19   (1986) ("<u>Press-Enterprise II</u>") (First Amendment right of access to

20   <u>voir dire</u> examination of jurors in a criminal trial).  But neither

21   the First Amendment nor common law provide the public or press a

22   right to access discovery materials such as the pleadings involved in

23   defendant's motion to compel, nor any of the exhibits attached to

24   those pleadings.  <u>Civ. Beat L. Ctr. for the Pub. Int., Inc. v. Maile</u>,

25   No. 23-15108, 2024 WL 3958954, at *5 (9th Cir. Aug. 28, 2024) ("The

26   First Amendment right does not attach to certain proceedings and

27   records related to . . . discovery."); <u>United States v. Sleugh</u>, 896

28   F.3d 1007, 1013-14 (9th Cir. 2018) (no qualified right of access for

9

1    filings related to Federal Rule of Criminal Procedure 17(c) subpoenas

2    and finding "there is no tradition of access to criminal discovery");

3    United States v. Kravetz, 706 F.3d 47, 53-54 (1st Cir. 2013) (same);

4    United States v. Nickens, 809 F. App'x 584, 591 (11th Cir. 2020)

5    ("Discovery materials, however, do not fall within the scope of

6    either the First Amendment or the common law right of access.").[7]

7          1.    There Is No First Amendment Qualified Right of Access

8                to the MTC Materials

9          The right of access under the First Amendment applies only when

10   the "tests of experience and logic" have been met, that is, if (1)

11   "the place and process have historically been open to the press and

12   general public," and (2) "public access plays a significant positive

13   role in the functioning of the particular process in question."

14   Press-Enterprise II, 478 U.S. at 8-9; Times Mirror Co. v. United

15   States, 873 F.2d 1210, 1213 n.4 (9th Cir. 1989) (applying the

16   "experience and logic" test to documents generated in a judicial

17   proceeding).  As Ninth Circuit held in Sleugh, applying the so-called

18   "experience and logic" test to pre-trial filings related to Rule 17

19   subpoenas, it observed that contrary to there being any tradition of

20

21   _____
        [7] In its motion, the Applicant argues that the Ninth Circuit has
22   found "'the public and press have a first amendment right of access
     to pretrial documents in general.'"  (Mot., p. 9 (quoting Associated
23   Press v. U.S. Dist. Ct. for Cent. Dist. of Cal., 705 F.2d 1143, 1145
     (9th Cir. 1983)).  This decision occurred before the Supreme Court's
24   rulings in Press-Enter. Co. v. Superior Court, 478 U.S. 1 (1986)
     ("Press-Enterprise I") and Press-Enterprise II, which provided a
25   framework for courts to analyze whether proceedings and filings are
     subject to the First Amendment's qualified right of access.  See
26   United States v. Carpenter, 923 F.3d 1172, 1178-79 (2019)
     (acknowledging an excerpt from the same quotation from Associated
27   Press before proceeding to apply the "experience and logic" test).
     Accordingly, despite this broad statement of law, this Court must
28   still apply the "experience and logic test" here to the materials in
     question.
                                    10

public access to criminal discovery, "[d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation."  896 F.3d at 1013 (internal quotation marks omitted.)  As for logic, the Ninth Circuit found that "[m]ore broadly, public access would have a 'deleterious effect ... on the parties' search for and exchange of information in the discovery process.'"  Id. at 1013-14 (quoting Kravetz, 706 F.3d at 54).

Other circuits have similarly concluded that there is no First Amendment qualified right of access to discovery materials and proceedings.[8]  United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (observing that courts often order that discovery information remain private because "[i]f it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe"); United States v. Gonzales, 150 F.3d 1246, 1260 (10th Cir. 1998) ("Discovery proceedings are fundamentally different from other proceedings to which courts have recognized a First Amendment right of access."); see also Chicago Trib. Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313 n.10 (11th Cir. 2001) ("The prospect of all discovery

---

[8] The Applicant relies upon the Fourth Circuit's order in In re Time Inc., 182 F.3d 270, 271 (4th Cir. 1999), for support that the press and public have a qualified right of access to motions to compel discovery specifically.  (Mot., p. 9.)  In contrast to the cases cited above, the Fourth Circuit provided no analysis for its decision that the qualified right of access applies to motions to compel discovery, summarily stating that motions to compel discovery are "pretrial motions" that "are part of the proceedings to which the traditional First Amendment right of access applies."  182 F.3d at 271.

1   material being presumptively subject to the right of access would

2   likely lead to an increased resistance to discovery requests.").

3               2.    There Is No Common-Law Qualified Right of Access to

4                     the MTC Materials

5         The common-law right of access also does not apply to discovery

6   materials like the MTC Materials here.  Instead, it only applies to

7   "judicial records," which the court in Sleugh interpreted to be those

8   materials that "affect substantive rights", 896 F.3d at 1014, and not

9   "'tangentially related to the underlying cause of action,'" id.

10  (quoting Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092,

11  1099 (9th Cir. 2016)).  Adopting reasoning from the First Circuit,

12  the Ninth Circuit noted that "'[m]aterials submitted to a court for

13  its consideration of a discovery motion are actually one step further

14  removed in public concern from the trial process than the discovery

15  materials themselves.'"  Id. at 1015 (quoting Kravetz, 706 F.3d at

16  54).[9]  This Court should conclude the same here and find that the MTC

17  Materials are "tangentially related to the underlying cause of

18  action" and therefore not subject to the qualified common-law right

19  of access.  Id. at 1014.  Accordingly, only good cause need exist to

20  keep the materials sealed and/or redacted, as the government seeks to

21  do here.  Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1179

22  (9th Cir. 2006).  Good cause to keep materials sealed includes when

23

24

25  _____

26       [9]  The Applicant cites United States v. Wecht, 484 F.3d 194, 210
    (3d Cir. 2007) for the proposition that criminal and civil discovery
27  is different, particularly criminal discovery's Constitutional
    dimension.  (Mot., p. 10.)  While the Applicant's assertion is no
    doubt true, it has not stopped numerous courts from analogizing the
28  two and finding that there is not a qualified right of access to
    criminal discovery materials, including the Ninth Circuit.

unsealing would cause a person annoyance, embarrassment, oppression, or undue burden or expense.  Id. at 1180.

The Applicant's reliance on United States v. Miske, No. 19-cr-00099, 2022 WL 1073797, at *3 (D. Haw. Apr. 8, 2022) is misplaced. (Mot., p. 10.)  There, unlike here, the district court appeared prepared to substantively rule on the motion to compel.  As discussed above, the district court here did not substantively rule on defendant's arguments and instead dismissed it for violation of the Local Rules.  (Dkt. 81.)  Defendant never re-filed and therefore the Court never "determine[ed] the litigants' substantive rights." Sleugh, 896 F.3d at 1014.  Accordingly, defendant's case is akin to another unpublished district court decision from within this circuit, Jones v. PGA Tour, Inc., where the court found that a litigant's motion to dismiss should not be unsealed because it had not relied on it to "determin[e] the litigants' substantive rights," since the parties filed stipulated to dismiss the action.  No. 22-CV-04486-BLF, 2023 WL 5520771, at *4 (N.D. Cal. Aug. 24, 2023) (internal quotation marks omitted).

   3. There Is No Qualified Right of Access to the Wiretap Materials, Investigative Reports, and Interview Transcripts[10]

Several courts have found that neither the First Amendment nor common law provide the public or press a right to access to wiretap

---

[10] As discussed below, the government does not dispute that there is a qualified, common-law right of access to post-investigation search warrant materials after an investigation ends, nor does it dispute that there is a qualified, First Amendment right of access to materials attached to its sentencing position.  For its part, the Applicant does not argue that the First Amendment right attaches to post-investigation search warrants in the Ninth Circuit independent
*(footnote cont'd on next page)*

1    materials.  See In re New York Times Co. to Unseal Wiretap & Search
2    Warrant Materials, 577 F.3d 401, 411 (2d Cir. 2009) (reversing
3    district court decision unsealing wiretap materials and concluding
4    there is no common-law nor First Amendment right of access to wiretap
5    materials); In re U.S. Dep't of Just. Motion to Compel Facebook to
6    Provide Tech. Assistance in Sealed Case, 357 F. Supp. 3d 1041, 1043-
7    45 (E.D. Cal. 2019) (no common-law nor First Amendment right of
8    access to wiretap materials); United States v. Blagojevich, 662 F.
9    Supp. 2d 998, 1002-04 (N.D. Ill. 2009) (no common-law nor First
10   Amendment right of access to wiretap materials)[11]; see also In re
11   Granick, 388 F.Supp.3d 1107, 1126 (N.D. Cal. 2019) (no qualified
12   First Amendment right of access; petitioners did not argue for a
13   common law right of access).  Accordingly, the wiretap materials
14   should remain sealed because there is no qualified right of access to
15   them.[12]

16   _____

17   of its argument that attaching such materials to defendant's motion
     to compel transformed them into such.  The Ninth Circuit has not yet
18   determined whether pen register applications are subject to a
     qualified right of access, and one court from the Northern District
     of California determined while there was no First Amendment right of
19   access to such materials, a common-law right of access exists.  In re
     Granick, No. 16-MC-80206-KAW, 2018 WL 7569335, at *11 (N.D. Cal. Dec.
20   18, 2018), report and recommendation adopted, 388 F. Supp. 3d 1107
     (N.D. Cal. 2019).  Regardless of whether there is a qualified right
21   of access to these records, for the reasons discussed herein, there
     are compelling reasons to redact those materials in the manner
22   suggested by the government prior to unsealing them.

23      [11] In Blagojevich, the district court unsealed materials relating
     to defendants' motion to suppress but order the materials to be
24   redacted to protect the identity of uncharged third parties because
     the briefs would form "the basis of his decision."  662 F. Supp. 2d
25   at 1005.  As discussed above, the Court here did not reach the merits
     of defendant's motion to compel and denied it for failure to comply
26   with the Local Rules.  Even if it had, this Court should follow the
     reasoning of the Blagojevich court and order redactions of
27   identifying information of uncharged third parties.

        [12] All the cases cited by the Applicant for why the Wiretap
28   Materials here should be unsealed require that the underlying records
                                              (footnote cont'd on next page)

                                   14

1    Similarly, the Applicant has provided no independent basis for

2    why the investigative reports and the interview transcript should be

3    subject to a qualified right of access.  Because these materials are

4    not subject to a right of access by their mere attachment to the MTC

5    Materials, this Court should not unseal them either.

6    **B.    Compelling Reasons and Governmental Interests Exist to**

7    **Redact Any Unsealed MTC Materials and Sentencing Materials**

8    The Ninth Circuit has held that the public has a qualified

9    common-law right of access to sealed search warrant materials after

10   an investigation has been terminated.  United States v. Bus. of Custer

11   Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of

12   Billings, Mont. ("Custer Battlefield Museum"), 658 F.3d 1188, 1194

13   (9th Cir. 2011).  But that right of common-law access is not

14   absolute, and a party can overcome the strong presumption of access

15   by articulating "compelling reasons" supporting continued sealing of

16   the materials and/or redaction of certain information.  See id. at

17   1195 (citing Kamakana, 447 F.3d at 1178-79).  Similarly, the

18   qualified right of access under the First Amendment is not absolute

19   either.  Where the right exists, it may be "overcome only by an

20   overriding interest based on findings that closure is essential to

21   preserve higher values and is narrowly tailored to preserve that

22   interest."  Press-Enterprise II, 478 U.S. at 9.

23   As detailed below, compelling reasons and governmental interests

24   support the limited and tailored redactions proposed by the

25   government here to any materials unsealed by the Court.

26   _____
27   in which those materials are cited to be subject to a qualified right
     of access themselves.  (Mot., pp. 11-12.)  For the reasons discussed
     above, the MTC Materials are not subject to a qualified right of
28   access themselves and therefore the cases cited by Applicant are of
     no assistance to it.

15

1               1.   Uncharged Subjects Have Compelling Privacy,

2                  Reputational, and Due Process Interests that Warrant

3                  Redacting Their Names/Identities

4       Where an investigation does not lead to criminal charges against

5 a person, the uncharged person retains significant personal interests

6 that are implicated when a party seeks to unseal records regarding

7 the inquiry. See Matter of the Application of WP Co. LLC ("WP Co."),

8 201 F. Supp. 3d 109, 122 (D.D.C. 2016). Not only does the "mere

9 association with alleged criminal activity as the subject or target

10 of a criminal investigation carr[y] a stigma that implicates an

11 individual's reputational interest," as well as "an individual's

12 privacy interests," a related "a due process interest arises from an

13 individual being accused of a crime without being provided a forum in

14 which to refute the government's accusations."[13] Id.; see Times

15 Mirror, 873 F.2d at 1216 (identifying various "risks" that are

16 present "when search warrant materials are made public," albeit in

17 the context of an ongoing investigation, including that "persons

18 named in the warrant papers will have no forum in which to exonerate

19 themselves," causing "possible injury to privacy interests"); In re

20 Press Application for Access to Jud. Recs. in Case No. 23-SC-31 ("In

21

22

---

23       [13] DOJ policy generally forbids prosecutors from identifying uncharged third parties in public documents and hearings to protect

24 these same privacy and reputational interests. See United States Department of Justice Manual § 9-27.760 (Limitation on Identifying

25 Uncharged Parties Publicly) ("In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and

26 reputation interests of uncharged third parties . . . As a series of cases makes clear, there is ordinarily 'no legitimate governmental

27 interest served' by the government's public allegation of wrongdoing by an uncharged party . . . In most cases, any legitimate

28 governmental interest in referring to uncharged third-party wrongdoers can be advanced through means other than those condemned in this line of cases.").

re Press Application"), No. MC 23-84 (JEB), 2023 WL 8254630, at *6
(D.D.C. Nov. 29, 2023) ("Although a search warrant is not a formal
allegation of a crime, the affidavit's narrative, if unsealed, would
essentially levy such allegations against unindicted individuals,"
implicating privacy interests that are "particularly weighty" for
uncharged subjects who have no forum to vindicate themselves)
(cleaned up).

       Given the significant concerns at stake, courts have repeatedly
found that uncharged parties' (and other third parties') privacy,
reputational, and due process interests are sufficiently compelling
to outweigh the public's right of access to sealed materials.  See,
e.g., In re Granick, 388 F. Supp. 3d 1107, 1119 (N.D. Cal. 2019)
(denying petition to unseal search warrant materials filed between
2006 and 2018 given, among other factors, the government's compelling
interest in protecting "the privacy, reputational and due process
interests of individuals who were the subject of closed
investigations that did not result in criminal charges"); In re New
York Times Co., No. MC 21-91 (JEB), 2021 WL 5769444, at *5 (D.D.C.
Dec. 6, 2021) (denying newspaper's application to unseal government's
redactions of "detailed information about subjects of the [criminal]
investigation — including information that could identify them, the
extent of their cooperation with law enforcement, and their private
activities," based, in part, on privacy interests of the uncharged
subjects); WP Co., 201 F. Supp. 3d at 129 ("[C]ompelling privacy and
due process interests of persons who have not been charged outweigh
any limited public interest in further disclosure in this case.").
Indeed, in the same opinion it ruled the common-law right of access
applies to search warrant materials post-investigation, the Ninth

17

Circuit explained that "the privacy interests of the individuals
identified in the warrants and supporting affidavits" are "important"
and endorsed protecting those interests "through a court's discretion
either to release redacted versions of the documents or, if
necessary, to deny access altogether."  See Custer Battlefield
Museum, 658 F.3d at 1194.

The Court should conduct the same analysis here.  As is
commonplace in public corruption investigations, the government did
not bring criminal charges against multiple people it investigated,
including both public officials and private citizens.  While the
government's decision to not prosecute certain individuals does not
necessarily exonerate those people or suggest no wrongdoing by them
occurred (although a lack of charges sometimes may denote those
conclusions), the reality is that if the names and/or identities of
these uncharged subjects are not redacted in the MTC Materials and
Sentencing Materials, the public will draw the (mistaken but
understandable) conclusion that they are guilty of crimes simply by
being subjects of the federal investigation.  This disclosure
subjects the uncharged persons to "the unfairness of being
stigmatized from sensationalized and potentially out-of-context
insinuations of wrongdoing" when they "lack the opportunity to clear
their names at trial," WP Co., 201 F. Supp. at 124 (cleaned up),
offending the uncharged subjects' privacy, reputational, and due
process interests.[14]

_____

[14] The cases Applicant cites stand for the proposition that where
public officials are involved in the alleged misconduct at issue in
that case or investigation, then the weighty public interests
outweigh any privacy interests those officials may have in having
their names withheld from public scrutiny.  (Mot., pp. 14-15.)  In
*(footnote cont'd on next page)*

18

2.   There Are Compelling Reasons to Protect the Identities of Individuals Who Cooperated in the Federal Investigation

The government may generally "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." WP Co., 201 F. Supp. 3d at 127 (cleaned up).  Preservation of witness anonymity "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."  Roviaro v. United States, 353 U.S. 53, 59 (1957). Among other things, witness anonymity "serves to ensure potential witnesses are free to provide information without fear of reprisal" and that "investigators are able obtain information and assistance from individuals with direct knowledge of criminal conduct." WP Co., 201 F. Supp. 3d at 127.  This is "critical to law enforcement efforts and the government's compelling interest in protecting the public." Id.  Witness anonymity also shields cooperating witnesses from many of the privacy, reputational, and due process concerns faced by uncharged subjects of investigations whose identities become public. See id. at 122.

For these important reasons, courts routinely endorse sealing and/or redacting the identities of witnesses who cooperate with investigators.  See Custer Battlefield Museum, 658 F.3d at 1195 n.5.

---

defendant's criminal case, the public officials' conduct is tangential to defendant's criminal bankruptcy and tax fraud.  It proves that defendant was working and earning an income in which he interfaced with public officials, nothing more.  Further, as noted above, none of these officials were named as co-conspirators in defendant's indictment, nor were they central figures in his case.

19

("[T]he need to protect the identities and safety of confidential informants" is among the "recognized . . . concerns that may call for redaction of the [warrant] materials or withholding of disclosure outright."); In re Los Angeles Times Commc'ns LLC, 628 F. Supp. 3d 55, 70 (D.D.C. 2022) (finding that proposed redactions of search warrant materials were "appropriate to protect third-party privacy interests—including . . . information gained from the cooperation of private third-party witnesses.").

Here, redacting the names and/or identities of individuals who cooperated in the federal investigation will serve compelling law enforcement interests by incentivizing people with direct knowledge of crimes to report that information to the government.  If the names and/or identities of individuals who did so in the federal investigation were made public, particularly in a public corruption investigation which tends to garner more media scrutiny, "future investigators would risk losing the ability to obtain truthful information from subjects or witnesses since those individuals might not trust that their statements would in fact be kept private."  See In re New York Times Co., 2021 WL 5769444, at *6 (cleaned up). Because the MTC Materials and Sentencing Materials rely on information provided by third-party witnesses whose role in the investigation is not publicly known (like many significant corruption and fraud investigations), disclosure of their names and/or identities would "compromise not only those third-party witnesses' reputations . . . but also the government's own law enforcement interest in maintaining its ability to secure cooperation from witnesses in the future."  In re Los Angeles Times Commc'ns, 628 F. Supp. 3d at 67 (cleaned up).

3. <u>Compelling Reasons Exist to Redact Any Sensitive Law</u>
<u>Enforcement Techniques</u>

The government has a significant and compelling interest in preserving the secrecy of its sensitive law enforcement techniques, including those associated with its wiretap and pen register applications.  <u>See, e.g.</u>, <u>In re City of New York</u>, 607 F.3d 923, 940–41 (2d Cir. 2010) (the purpose of the common law's recognition of a law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation"); <u>United States v. Rigmaiden</u>, 844 F. Supp. 2d 982, 989 (D. Ariz. 2012) (law enforcement privilege to shield sensitive surveillance technique from disclosure); <u>Granick</u>, 388 F. Supp. 3d at 1119 (recognizing protecting "law enforcement techniques" as a compelling government interest).

The same should be true here.  To the extent the Court orders any materials unsealed, the government should be permitted to redact any information disclosing sensitive law enforcement techniques, particularly those associated with the functioning of wiretap and pen registers.

4. <u>Victim Information Should be Redacted</u>

Courts have long recognized that victims' identities may be shielded from public access under certain circumstances.  <u>See</u> <u>United States v. Hubbard</u>, 650 F.2d 293, 315 (D.C. Cir. 1980) ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect . . . the

privacy and reputation of victims of crimes."). This often occurs in
connection with minor victims, see Richards v. Cox, No.
16CV01794JCMBWN, 2019 WL 2518110, at *2 (D. Nev. June 18, 2019), and
victims of sexual assault, see Heineke v. Santa Clara Univ., No. 17-
CV-05285-LHK, 2017 WL 6026248, at *22 (N.D. Cal. Dec. 5, 2017), but
the fact remains that all victims of crimes are statutorily afforded
privacy rights. See 18 U.S.C. § 3771(a)(8) (the Crime Victims'
Rights Act) (stating that crime victims have "[t]he right to be
treated with fairness and with respect for the victim's dignity and
privacy."). The MTC Materials allude to the identity of at least one
potential victim. To protect that person's "dignity and privacy" as
a crime victim, see id., the Court should authorize redactions of
their identity in the search warrant materials.

> ### 5. Individuals' Personal Identifying Information Should Be Redacted

The dissemination of personal identifying information -- such as
individuals' dates of birth, social security numbers, bank account
information, home and personal email addresses, and personal
telephone numbers -- poses considerable harm to those persons and
their privacy interests, yet has minimal public interest. In light
of this, courts routinely protect personal identifying information
from public dissemination. See, e.g., Mahone v. Amazon.com, Inc.,
No. C22-594 MJP, 2024 WL 965139, at *2 (W.D. Wash. Mar. 6, 2024)
(authorizing redaction of personal identifying information because
"[d]isclosure of this information could cause a significant harm to
third parties," and "the public can otherwise understand and
appreciate the merits of Defendants' position without this
information."); Capitol Specialty Ins. Corp. v. GEICO Gen. Ins. Co.,

No. CV 20-672-RSWL-EX, 2021 WL 7708484, at *3 (C.D. Cal. Apr. 14,
2021) ("The public has a minimal interest in personal identifying
information."); Activision Publ'g, Inc. v. EngineOwning UG, No.
CV222CV00051MWFJCX, 2023 WL 2347134, at *1 (C.D. Cal. Feb. 27, 2023)
(finding compelling reasons to seal parties' customers' personal
information, including the customers' names, account numbers, IP
addresses, and email addresses); Reflex Media, Inc. v. Doe No. 1, No.
218CV02423RFBBNW, 2022 WL 2985938, at *2 (D. Nev. July 28, 2022)
(keeping personal identifying information in an exhibit under seal
"because public disclosure of this information could be used for
improper purposes").

       This proposition should not be controversial given the
requirements in Federal Rule of Criminal Procedure 49.1 and Federal
Rule of Civil Procedure 5.2, which are designed to safeguard this
highly sensitive information.  See Fed. R. Crim. P. 49.1(a)
(requiring that an individual's social security number, taxpayer
identification number, date of birth, the name of an individual known
to be a minor, and financial account number be redacted in any
document filed electronically or in paper form); Fed. R. Civ. P.
5.2(a) (same).  Accordingly, the Court should allow the government to
redact all personal identifying information in any unsealed
materials.

**IV.  CONCLUSION**

       For the foregoing reasons, the government respectfully requests
that this Court keep the materials requested sealed and/or redacted
in the manner proposed by the government, as set forth in the
government's proposed order filed contemporaneously with the instant
opposition.

                                   23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28