O

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>MARK HANDEL,<br><br>                    Defendant. | Case № 2:20-cr-00612-ODW<br><br>**SUPPLEMENTAL ORDER MODIFYING ORDER ON NON-PARTY'S MOTION TO INTERVENE AND UNSEAL [158]** |

## I.   INTRODUCTION

On August 30, 2024, Non-Party Los Angeles Times Communications, LLC ("LA Times") filed a motion to intervene and unseal.  (Mot. Intervene & Unseal, ECF No. 154; Mem. P. & A. ISO Mot. Intervene & Unseal ("Mot." or "Motion"), ECF No. 155.)  On September 19, 2024, the Court granted in part and denied in part LA Times's Motion.  (Order Den. In Part & Granting In Part Mot. ("Prior Order"), ECF No. 158.)  This Order modifies and supplements the Court's Prior Order.

## II.   BACKGROUND

On December 9, 2020, Mark Handel was indicted for fraud and money laundering related to his Title 11 bankruptcy case.  (Indictment, ECF No. 1.)

On November 29, 2021, Handel requested ex parte for leave to file a motion to compel discovery under seal.  (Def.'s Ex Parte Appl., ECF No. 59.)  The Court

1    granted Handel's ex parte application, (Order Granting Def.'s Ex Parte Appl., ECF
2    No. 60), and Handel filed his motion to compel discovery under seal, (Mot. Compel
3    Disc. ("MTC"), ECF No. 61).  The Government then moved ex parte for leave to file
4    its opposition and related exhibits under seal.  (Pl.'s Ex Parte Appl., ECF No. 70.)
5    After the Court granted its request, (Order Granting Pl.'s Ex Parte Appl., ECF
6    No. 71), the Government filed its opposition and related exhibits under seal, (Opp'n
7    MTC, ECF No. 72; Opp'n MTC Exs., ECF No. 73).  Thereafter, the Court denied
8    Handel's motion to compel discovery for failure to comply with procedural
9    requirements under Local Rule 37-2.4.  (Min. Order Den. MTC, ECF No. 81.)

10   Without renewing his motion to compel discovery, Handel entered into a plea
11   agreement.  (Plea Agreement, ECF No. 100.)  On April 24, 2024, the Court entered
12   judgment against Handel.  (Third Am. J. Order, ECF No. 153.)

13   On August 30, 2024, LA Times, asserting the First Amendment and common
14   law right of access, moved to unseal the parties' motion to compel discovery briefing
15   and exhibits, (ECF Nos. 59, 61, 70–73, 77–78), and the Government's sentencing
16   position exhibits, (ECF No. 125).  (Mot. 1.)  LA Times seeks disclosure of these
17   documents as they contain "information on law enforcement's investigation into
18   politicians and their staffers."  (*Id.* at 3–4.)  This request relies on the fact that the
19   Government's indictment, motion to compel discovery, and sentencing materials
20   indicated that the Government began investigating Handel during a probe into
21   political corruption.  (*Id.* at 3–5.)

22   On September 19, 2024, the Court found good cause to maintain the sealing of
23   most of the briefings and exhibits related to Handel's motion to compel discovery.
24   (Prior Order ¶ 1.)  For good cause shown and compelling reasons, the Court ordered
25   search warrant applications and certain exhibits attached to the Government's
26   sentencing position to be unsealed with redactions.  (*Id.* ¶¶ 3–5.)  The Court also
27   ordered unsealed certain materials considering the Government's non-opposition to
28   portions of LA Times's Motion.  (*Id.* ¶ 2.)

LA Times now petitions the Ninth Circuit for a writ of mandamus to unseal and unredact the documents previously sealed and unsealed with redactions pursuant to the Court's Prior Order. Pet. Writ Mandamus to the U.S. Dist. Court for the Cent. Dist. of Cal. ("Pet."), *L.A. Times Commc'n v. U.S. Dist. Ct.*, No. 24-6972 (9th Cir. filed Dec. 9, 2020). Specifically, LA Times seeks access to the names and identities of the uncharged third parties. *Id*. at 4, 15–18. On December 23, 2024, the Ninth Circuit ordered the Government to file an answer to LA Times's Petition and permitted Handel to respond. (Ninth Cir. Order, ECF No. 160.) Additionally, the Ninth Circuit provided this Court the opportunity to supplement its Prior Order. (*Id.* at 2.) This is that supplemental order.

### III.   LEGAL STANDARD

"The law recognizes two qualified rights of access to judicial proceedings and records . . . ." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011). First, there is "'a First Amendment right of access to criminal proceedings' and documents therein." *Id.* (quoting *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986)). Second, there is "a common law 'right to inspect and copy public records and documents, including judicial records and documents.'" *Custer Battlefield*, 658 F.3d at 1192 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

### A.   First Amendment Right of Access

To determine whether the First Amendment right of access attaches, courts apply the two-part "experience and logic" test. *United States v. Sleugh*, 896 F.3d 1007, 1013 (9th Cir. 2018). The experience prong considers "whether the place and process have historically been open to the press and general public." *Press-Enter.*, 478 U.S. at 8; *accord Sleugh*, 896 F.3d at 1013. The logic prong considers "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter.*, 478 U.S. at 8; *accord Sleugh*, 896 F.3d at 1013. If both elements are met, the right of access can be overcome only by "specific, on the

1 record findings" demonstrating "that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter.*, 478 U.S. at 13–14; *accord Sleugh*, 896 F.3d at 1013 (requiring a showing of "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to that interest").

### B.   Common Law Right of Access

To determine whether the common law right of access attaches, courts in the Ninth Circuit begin "with a strong presumption in favor of access to court records," unless the document is one which has "traditionally been kept secret for important policy reasons." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134–35 (9th Cir. 2003). Documents that fall in the "traditionally kept secret" category include "grand jury transcripts and warrant materials during the pre-indictment phase of an investigation." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1185 (9th Cir. 2006).

If a document is not one that is traditionally kept secret, to overcome the strong presumption of public access, there must be "sufficiently compelling reasons." *Foltz*, 331 F.3d at 1135. The party seeking to seal the judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79 (cleaned up). The court then balances "'the competing interests' of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (quoting *Foltz*, 331 F.3d at 1135). The court "must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

## IV.    DISCUSSION

This Order supplements and modifies the Court's Prior Order.

In the Prior Order, the Court unsealed search warrant applications, (MTC Exs. G, H), and four exhibits attached to the Government's sentencing position, (ECF

No. 125 Exs. 2–5), with redactions of: (1) the names and identities of uncharged third parties subject to the federal investigation; (2) the names and identifying information of government informants and witnesses; (3) sensitive law enforcement techniques; (4) the names and identities of victims and intended victims; and (5) personal identifying information, (Prior Order ¶¶ 4–5). The Court also sealed the motion to compel discovery materials, (ECF Nos. 59, 61, 70–73, 77–78). (Prior Order ¶ 1.)

**A.     Search Warrant Applications and Sentencing Position Materials**

The Court clarifies its reasoning for unsealing the search warrant applications, (MTC Exs. G, H), and sentencing position exhibits, (ECF No. 125, Exs. 2–5), with redactions, and modifies its decision regarding redaction of the uncharged third parties' names and identities. (Order ¶¶ 4–5.)

*1.     First Amendment Right of Public Access*

With respect to the search warrant applications, the Ninth Circuit has left open "the question whether the public has a First Amendment right of access to warrant materials after an investigation is concluded or after indictments have been returned." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1218 (9th Cir. 1989).

To determine whether there is a First Amendment right of access to the search warrant applications at issue, the Court applies the "experience and logic" test. "In the post-investigation context, warrant materials have generally been open to the public." *Custer Battlefield*, 658 F.3d at 1194. Courts in other circuits have also "concluded that there is no need for continued secrecy" of search warrant materials in the post-indictment and post-plea context. *United States v. Kott*, 380 F. Supp. 2d 1122, 1124 (C.D. Cal. 2004) (collecting cases). Here, LA Times seeks access to the search warrant applications after Handel pleaded guilty. As post-plea search warrant materials have been open to the public "without serious adverse consequences, logic necessarily follows." *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 n.6 (9th Cir. 2008). Accordingly, the First Amendment right of public access attaches to the search warrant applications.

As to the sentencing proceeding exhibits, the Ninth Circuit previously held, and the Government concedes, (*see* Opp'n Mot. 13 n.10 ("Opp'n"), ECF No. 157), that "the First Amendment right of access applies to sentencing proceedings." *States v. Rivera*, 682 F.3d 1223, 1229 (9th Cir. 2012).

### 2. Common Law Right of Access

Likewise, the common law right of access attaches to the search warrant applications and exhibits attached to the Government's sentencing position. There is a common law right of access to search warrant materials after an investigation has been terminated.[1] *Custer Battlefield*, 658 F.3d at 1192. "Documents used in aid of sentencing are independently presumed to be open to the public pursuant to the common law right of access." *United States v. Huntley*, 943 F. Supp. 2d 383, 385 (E.D.N.Y. 2013). Therefore, the common law right of access also attaches to the search warrant applications and the exhibits to the Government's sentencing position.

### 3. Compelling Interests and Compelling Reasons

To overcome the qualified First Amendment right of access, the Government must show that (1) "closure serves a compelling interest"; (2) "there is a substantial probability that, in the absence of closure, this compelling interest would be harmed"; and (3) "there are no alternatives to closure that would adequately protect the compelling interest." *United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017). To overcome the common law presumption of access, the Government must articulate compelling reasons "that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79. The court must then "balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (cleaned up). The court must make its findings based on specific factual findings. *See Phoenix Newspapers, Inc. v. U.S. Dist. Ct.*, 156 F.3d 940, 950 (9th Cir. 1998); *Custer Battlefield*, 658 F.3d at 1195.

---

[1] The parties do not dispute this. (*See* Mot. 8–13 (arguing that the First Amendment and common law right of access attaches to all documents at issue); Opp'n 13 n.10 (conceding that common law right of access applies to post-investigation search warrant materials).)

Here, the Government does not provide sufficient facts supporting its concerns regarding the uncharged parties' privacy, reputation, and due process. (*See* Opp'n 15–18.) A court may not restrict access when, as here, the Government's brief "cited the general principle that individuals identified in warrants have privacy interests that may justify denying access" without explanation of a "factual basis" for the restrictions sought. *Custer Battlefield*, 658 F.3d at 1195. The Government bases its concerns on the fact that it did not bring criminal charges against the individuals subject to the political corruption investigation. (Opp'n 18.) These individuals "had little relevance to [Handel's] case," which focused on his bankruptcy fraud and money laundering. (*Id.* at 1.) If the uncharged parties' names and identifying information are unsealed or unredacted, they risk being "stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing," and lack the opportunity to clear their respective names. (*Id.* at 18.) While this may be true, the Government fails to provide facts to show that the uncharged third parties face concrete risk of such stigmatization. Accordingly, the Court cannot make a finding that the privacy, reputation, and due process concerns are compelling.

In contrast, the Government shows a sufficiently compelling government interest to redact the names and identifying information of informants and witnesses. The Government has the privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). This privilege applies if "the identity of the informer has [not] been disclosed to those who would have cause to resent the communication." *Id.* at 60. Here, the informant and cooperating witnesses have not been disclosed—the investigation is not public knowledge and is closed without any criminal charges. (Opp'n 1.) The privilege applies as disclosure can harm the Government's "ability to secure cooperation from witnesses in the future." (*Id.* at 20 (quoting *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 67 (D.D.C. Aug. 29, 2022)).)

The Government likewise shows a compelling interest to redact any sensitive law enforcement techniques. Here, the political investigation did not result in any criminal charges. The Government has a substantial and compelling interest to protect sensitive investigative techniques to prevent "criminal wrongdoers [from gaining] insight into the investigation and a roadmap to avoid apprehension." *Forbes Media LLC v. United States*, 548 F. Supp. 3d 872, 880 (N.D. Cal. 2021). This is especially pertinent if the investigation leads to any future criminal charges. Accordingly, "details about law enforcement's investigative techniques does not aid" the powerful public interest in political corruption. *L.A. Times Comm'cns*, 628 F. Supp 3d at 65.

Next, there is compelling reason to protect the names and identities of victims or intended victims. Citing 18 U.S.C. § 3771(a)(8), the Government argues that crime victims have a statutory "right to be treated with fairness and with respect for the victim's dignity and privacy." The documents at issue reveal the name of at least one potential victim. (Opp'n 22.) As the investigation did not result in any charges, the potential victim's privacy interest is especially significant to prevent "dignity and privacy concerns." Revealing such information would unnecessarily subject the victims or intended victims to public scrutiny without a trial for the crimes against them. As such, there is a substantial probability that the victim's privacy interest will be harmed, and this harm outweighs the public's interest.

Lastly, the personal identifying information such as social security numbers, dates of birth, bank account information, home address, personal email addresses, and personal telephone numbers also warrant protection. The Government cites Federal Rule of Criminal Procedure 49.1, which requires the Court to redact an individual's social security number, birth date, financial-account number, and home address. (Opp'n 23.) Similarly, courts in this district have routinely sealed the personally identifiable information of third-party individuals under the common law compelling reasons standard. *See Compeer Fin. ACA v. Graham,* No. 1:25-cv-00049-JLT-SKO, 2025 WL 268437, at *2 (E.D. Cal. Jan. 22, 2025) (citing cases in which courts found

8

compelling interest to seal personal identifying information of third-party individuals). The reason to protect such sensitive information is compelling when disclosure may result in a high risk of improper use. (Opp'n 23.) Thus, the Court finds the compelling reason to redact personal identifying information outweighs the public interest.

For the reasons discussed above, the Court previously found compelling reasons and significant interests to unseal the search warrant applications and sentencing position exhibits with redactions. (Prior Order ¶¶ 4–5.) In this Order, the Court modifies that finding only to hold that the Government fails to carry its burden to establish a compelling reason to seal the identities of the uncharged third parties. Accordingly, the Court orders that the search warrant applications, (MTC Exs. G, H), and exhibits 2–5 attached to the Government's sentencing position, (ECF No. 125 Exs. 2–5), be unredacted to reveal the names and identities of the uncharged third parties who were then subject to the federal investigation.

**B.    Motion to Compel Discovery Materials**

LA Times sought access to judicial records related to Handel's motion to compel discovery. (Mot. 1 (seeking to unseal ECF Nos. 59, 61, 70–73, 77–78).) This Order provides the Court's reasoning for its finding that "[t]he press and public do not have a qualified right of access to the[] [motion to compel discovery] materials, and good cause remains to keep them sealed." (Prior Order. ¶ 1.)

*1.    First Amendment Right of Access*

Although the Ninth Circuit has not specifically addressed whether there is a public right of access to motions to compel discovery and their exhibits, it has ruled that there is no First Amendment right of access to Federal Rule of Civil Procedure 17(c) subpoena applications and their supporting materials. *Sleugh*, 896 F.3d at 1013–15 (adopting approach set forth in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013)). The reasoning in *Sleugh* is informative as it analyzes

whether "experience and logic" permits the public to access criminal discovery materials like those at issue here.

Applying the "experience and logic" test, the First Amendment does not attach to the judicial records related to the motions to compel discovery. Under the experience prong, the Ninth Circuit agreed with the First Circuit in recognizing that "there is no tradition of access to criminal discovery" because "[d]iscovery, whether civil or criminal, is essentially a private process." *Id.* (alteration in original) (quoting *Kravetz*, 706 F.3d at 54); *see also United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery is neither a public process nor typically a matter of public record."). Under the logic prong, generally allowing the public access to discovery materials would "prematurely expose trial strategy to public scrutiny" and have a "deleterious effect . . . on the parties' search for and exchange of information in the discovery process." *Sleugh*, 896 F.3d. at 1013–14. The logical benefit to allowing public access is further diminished when, as here, the case resolved without the Court ruling on the merits of the motion to compel discovery. (*See* Min. Order Den. MTC; Plea Agreement).

Accordingly, the First Amendment right of public access does not attach to the motion to compel discovery briefing and exhibits. (*See* Prior Order ¶ 1.)

2. *Common Law Right of Access*

Under common law, there is "a strong presumption in favor of access to court records." *Sleugh*, 896 F.3d at 1013. The Ninth Circuit has, however, carved out an exception to the common law presumption of access for sealed documents attached to motions not "more than tangentially related to the merits of a case." *Sleugh*, 896 F.3d at 1014. "A 'good cause' showing under [Federal] Rule [of Civil Procedure] 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Kamakana*, 447 F.3d at 1180.

"[D]iscovery-related motions are often unrelated to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1098 (9th Cir. 2016).

Likewise, exhibits attached to the motion to compel discovery are "one step further removed in public concern" because they "merely invoke the district court's authority to compel the production of evidence," and are not evidence themselves. *Sleugh*, 896 F.3d at 1015. Here, the motion to compel discovery papers and exhibits are only tangentially related to the case, as the Court denied the motion to compel discovery on procedural grounds and the case resolved without admitting any exhibits into evidence. (*See* Min. Order Den. MTC; Plea Agreement.)

As the common law right of access is rebutted, the discovery motion documents may remain under seal after a "particularized showing of good cause." *Foltz*, 331 F.3d at 1138. Upon such a showing by the sealing party, the party seeking to unseal the records, LA Times, must provide "sufficiently compelling reasons" to unseal the sealed discovery materials. *Phillips ex. rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1214 (9th Cir. 2002).

Federal Rule of Criminal Procedure 16(d)(1) ("Rule 16") provides that "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." While the Ninth Circuit's precedents make clear that Federal Rule of Civil Procedure 26(c)'s ("Rule 26(c)") "good cause" standard applies to non-dispositive motions in the civil context, the Ninth Circuit has not yet articulated a corollary standard for criminal cases under Rule 16. *See, e.g.*, *Sleugh*, 896 F.3d at 1014 (referencing Rule 26(c) "good cause standard" in *Center for Auto Safety* in its analysis, but ultimately applying the "special need" standard under *Kravetz* for sealing subpoena materials). As the parties rely on authorities involving civil actions, (*see* Mot. 2; Opp'n 12), the Court applies the good cause analysis under Rule 26(c), *see United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (applying the same good cause analysis under Rule 26(c) and Rule 16).

The Supreme Court has recognized that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see*

*also* Fed R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ."). Likewise, "Rule 16(d)(1) allows for the exercise of the court's discretion in determining whether a party has shown good cause for restricting discovery." *United States v. Gomez*, No. CR 13-00282 PJH (DMR), 2014 WL 231984, at *4 (N.D. Cal. Jan. 21, 2014).

To show good cause, the party seeking protection must show that "specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210–11; *see also United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) (holding that good cause exists under Rule 16 "when a party shows that disclosure will result in a clearly defined, specific, and serious injury" (quoting *In re Terrorist Attacks on Sept. 11, 2021*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006).).

If the court finds particularized harm will result, it then "balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211. This balancing test is a "lesser" standard than the balancing test under the compelling reasons standard. *Kamakana*, 447 F.3d at 1177. To determine whether good cause exists, the Ninth Circuit has directed courts to consider the following factors:

(1) whether disclosure will violate any privacy interests;
(2) whether the information is being sought for a legitimate purpose or for an improper purpose;
(3) whether disclosure of the information will cause a party embarrassment;
(4) whether confidentiality is being sought over information important to public health and safety;
(5) whether the sharing of information among litigants will promote fairness and efficiency;
(6) whether a party benefitting from the order of confidentiality is a public entity or public official; and
(7) whether the case involves issues important to the public.

*In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 & n.5 (9th Cir. 2011) (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

Here, the Government articulates the same harm as mentioned above in the discussion of common law right of access to the search warrant applications and sentencing position exhibits. (Opp'n 18–23.) First, as to the uncharged parties, the Government asserts they risk being "stigmatized from sensationalized and potentially out-of-context insinuations of wrongdoing," and lack the opportunity to clear their respective names. (*Id.* at 18.) Second, the informants, cooperating witnesses, and victims face potential harm to their safety, dignity, and privacy if their names and identifying information are disclosed. Third, the Government asserts a privacy interest in safeguarding its investigative techniques. The Court finds the Government sufficiently articulates particularized harm. The balance of private and public interests below focuses on the identities of uncharged third parties.[2]

LA Times argues that the public has a legitimate interest in official misconduct. (Mot. 17.) To be sure, there is a public interest in how public officials behave. However, "this does not mean that discovery materials, which have no tradition of being publicly accessible, should *automatically* become fodder for selective dissemination at the expense of the reputation even of public officials when those officials might not be able to vindicate themselves through the judicial process." *Smith*, 985 F. Supp. 2d at 527–28. The Court finds it appropriate to evaluate "the nature of the information in the discovery materials, as well as the public officials at issue" in this case. *Id.* at 528.

---

[2] Although LA Times seeks to unseal the entirety of the motion to compel discovery papers and exhibits, it does not appear to object to the withholding of investigative techniques and the identities of informants, cooperating witnesses, and victims, as its argument focuses on the identities of the uncharged third parties. (*See* Mot. 17–18.) Accordingly, the Court focuses its balancing test analysis on the identities of the uncharged parties, and finds good cause and compelling reasons remain to protect the Government's investigative techniques and the names of the informants, cooperating witnesses, and victims.

"[W]hen an investigation has not led to criminal prosecution, the subject of the criminal investigation has significant privacy interest . . . ." *In re L.A. Times Commc'ns LLC*, No. 21-16 (BAH), 2021 WL 2143551, at *4 (D.D.C. May 26, 2021), *remanded on other grounds*, 28 F.4th 292, 297 (D.C. Cir. 2022). A closed investigation resulting in no indictment, such as the one here, "is more analogous to a federal grand jury proceeding," which is "presumptively secret" and if disclosed, has the potential to "cause serious harm to a person's privacy and due process interests." *Matter of the Appl. of WP Co. LLC*, 201 F. Supp. 3d 109, 122 (D.D.C. 2016); *see also Roe v. Puig*, No. 2:20-cv-11064-FMO (MRWx), 2021 WL 4557229, at *2 (C.D. Cal. Aug. 13, 2021) (weighing privacy concerns about police statements in favor of protection when no criminal charges were filed). The uncharged third parties have little relation to the case against Handel, which concerned bankruptcy fraud and money laundering, and the discovery materials include information about a closed investigation that did not lead to any criminal charges. (Opp'n 1.) As the Government argues, the dissemination of this information causes privacy concerns as it may lead "the public [to] draw the (mistaken but understandable) conclusion that [the uncharged third parties] are guilty of crimes simply by being subjects of the federal investigation." (Opp'n 18.)

Balancing the weighty privacy interest of the uncharged parties against the public interest in a political corruption investigation that (1) is not materially related to the case, (2) did not lead to any criminal prosecutions, and (3) is not public knowledge, the Court finds that the factors tip in favor of protecting the identities of the uncharged third parties, even if the sixth and seven factors weigh in favor of unsealing. And LA Times fails to articulate a "compelling reason" for disclosure. *Phillips*, 307 F.3d at 1213; (*see generally* Mot.; Reply.)

Thus, upon finding good cause based on the significant privacy interests in the context of the discovery motion in this case, the Court ordered that the motion to compel discovery materials remain sealed. (Prior Order ¶ 1.) As the Government

agreed to unsealing the discovery letters attached to the motions to compel discovery with redactions, (MTC Exs. B, D; Opp'n MTC Ex. 3), the Court ordered the discovery letters to be unsealed with the same redactions described above, (Prior Order ¶ 3), *see In re Roman Catholic Archbishop*, 661 F.3d at 425 (requiring a court to "keep in mind the possibility of redacting sensitive material").

## V. CONCLUSION

For the reasons discussed above, the Court hereby supplements and modifies its Prior Order. (ECF No. 158.) The Court stays the modifications in this order pending the Ninth Circuit's decision on LA Times's petition for writ of mandamus.

**IT IS SO ORDERED.**

February 20, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**